**05 CV 10905 GAO**                     Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District **Massachusetts** |
|---|---|

| Name (under which you were convicted):<br>**Lajuan Melton** | Docket or Case No.: |
|---|---|

| Place of Confinement:<br>**Souza-Baranowski Correctional Center** | Prisoner No.:<br>**W84006** |
|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| **Lajuan Melton**          v. | **Lois Russo, Superintendent, Souza-Baranowski Correctional Center** |

| The Attorney General of the State of **Massachusetts, Tom Reilly** |
|---|

MAGISTRATE JUDGE

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   Plymouth County (Massachusetts) Superior Court, 72 Belmont St., Brockton, MA 02301.

   (b) Criminal docket or case number (if you know): PLCR1998-00934.

2. (a) Date of the judgment of conviction (if you know): Sept. 30, 1999.

   (b) Date of sentencing: Sept. 30, 1999.

3. Length of sentence: Life.

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☐  No ☒

5. Identify all crimes of which you were convicted and sentenced in this case: _____
   Murder (second-degree).

6. (a) What was your plea? (Check one)

   | (1) | Not guilty ☒ | (3) | Nolo contendere (no contest) ☐ |
   |---|---|---|---|
   | (2) | Guilty ☐ | (4) | Insanity plea ☐ |

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/a.

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒        Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☐   No ☒

8.  Did you appeal from the judgment of conviction?

Yes ☒   No ☐

9.  If you did appeal, answer the following:

(a) Name of court: Massachusetts Appeals Court.

(b) Docket or case number (if you know) 2001-P-0312 (consolidated appeal from conviction and denial of new-trial and ancillary
motions).

(c) Result: Conviction affirmed; denial of motions affirmed.

(d) Date of result (if you know): Nov. 6, 2003.

(e) Citation to the case (if you know): 59 Mass.App.Ct. 1111, 798 N.E.2d 585, 2003 WL 22517387 (2003) (unpub.). See
opinion and order, below, at Petition Appendix 19-27.

(f) Grounds raised:
1. By instructing incorrectly on (a) the relationship between self-defense and murder; (b) relationship between the use of excessive force in self-defense and murder; and (c) the definition of voluntary manslaughter, the trial court violated the defendant's state and federal rights to present closing argument *(Herring v. New York*, 422 U.S. 853 (1996)); 2. the trial court violated defendant's state and federal due process rights, and otherwise prejudiced defendant, by instructing erroneously on (a) the relationship between self-defense and murder; (b) the relationship between the use of excessive force in self-defense and murder; and (c) the definition of voluntary manslaughter; 3. the lower court erred in holding that defendant's statement was non-custodial, such that *Miranda* warnings were not required; 4. the lower court erred in concluding that newly discovered evidence was inadmissible such that a new trial was not required; 5. the lower court improperly chilled defendant's right to testify by ruling that defendant's prior Massachusetts convictions, pending on appeal, for assaults similar to the charge on trial, would be admissible for impeachment; 6. the trial judge erred in refusing to instruct the jury that the tone of his voice, during jury instructions, could not be considered on issue of guilt.

(g) Did you seek further review by a higher state court?    Yes ☒   No ☐

If yes, answer the following:

(1) Name of court: Massachusetts Supreme Judicial Court.

(2) Docket or case number (if you know): FAR-13816.

(3) Result: Further appellate review denied; motion for reconsideration of denial of further appellate review denied.
See docket entries and order, below, at Petition Appendix 28, 29.

(4) Date of result (if you know): Jan. 29, 2004: further review denied; Feb. 2, 2005: reconsideration denied.

(5) Citation to the case (if you know): Denial of further review: 441 Mass. 1102 (2004).
Denial of reconsideration: no citation.

(6) Grounds raised:
1. By instructing incorrectly on (a) the relationship between self-defense and murder; (b) the relationship between use of excessive force in self-defense and murder; and (c) the definition of voluntary manslaughter, the trial court violated the defendant's state and federal rights to present closing argument *(Herring v. New York*, 422 U.S. 853 (1996)); * [see below]

(h) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐   No ☒

If yes, answer the following:

(1) Docket or case number (if you know): __N/a.__

_____ Question 9(g)(6), continued:_____

* 2. the intermediate appellate court misunderstood how the faulty jury instructions were prejudicial; 3. the trial court impermissibly chilled defendant's right to testify by ruling that if he did testify, his prior Massachusetts convictions still pending on direct appeal would be admissible for impeachment; 4. the intermediate appellate court wrongly held, under Massachusetts law, that a non-testifying defendant could not challenge, on appeal, the trial court's ruling that prior convictions would be admissible against defendant for impeachment if he testified.

(2) Result: _____N/a._____

_____

(3) Date of result (if you know): _N/a._____

(4) Citation to the case (if you know): __N/a._____

10. Other than the direct appeals listed above, have you previously filed any other petitions,

applications, or motions concerning this judgment of conviction in any state court?

Yes ☒ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _Plymouth County (Massachusetts) Superior Court, 72 Belmont St., Brockton, MA 02301.

(2) Docket or case number (if you know): _PLCR1998-00934._____

(3) Date of filing (if you know): __Motion for new trial and reduction in verdict._____

(4) Nature of the proceeding: August 13, 2001 (original motion); October 17, 2001 (amendment to motion).

(5) Grounds raised: _1. Trial court erred in ruling that if defendant testified, Massachusetts state-court
convictions pending on direct appeal would be admissible for impeachment; 2. trial court erred in refusing to give
tone-of-voice instruction; 3. newly discovered, exculpatory evidence buttressing defendant's claim of self-defense or,
in the alternative, the use of excessive force in self-defense, required a new trial._____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or

motion?        Yes ☐    No ☒    (Received nonevidentiary hearing.)

(7) Result: _Motion denied. See judge's memoranda and orders, below, at Petitioner Appendix 1-18.

(8) Date of result (if you know): June 14, 2002.

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Plymouth County (Massachusetts) Superior Court, 72 Belmont St., Brockton, MA 02301.

(2) Docket or case number (if you know): __PLCR 1998-00934._____

(3) Date of filing (if you know): __Jan. 31, 2002._____

(4) Nature of the proceeding: _Motion for deposition on written questions._____

(5) Grounds raised: _____

After trial, federal prisoner Emmanuel Carapinha made a disclosure concerning Mr. Melton's (petitioner's) case: Carapinha's fellow inmate,
Edson Miranda, who had been a passenger in the victim's car in Mr. Melton's case, had confessed to Carapinha that it was he, not Mr. Melton's
friend, who had lethally shot the victim. Counsel for Carapinha confirmed that if called as a witness, Carapinha would so testify. Defendant,
believing that he would be unable to subpoena Carapinha (then in federal custody in Rhode Island) to testify at a Massachusetts state
postconviction hearing, moved the postconviction court to order Carapinha to answer written questions swearing to Mr. Miranda's confession
or, in the alternative, to find that Carapinha was unavailable and to admit the document containing Carapinha's disclosure.

_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❑    No ☒x

(7) Result: Motion denied. _____

(8) Date of result (if you know): Feb. 4, 2002 (oral denial). _____

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court: Plymouth County (Massachusetts) Superior Court, 72 Belmont St., Brockton, MA 02301.

    (2) Docket or case number (if you know): PLCR 1998-00934.

    (3) Date of filing (if you know): October 5, 1999 (original motion); March 29, 2004 (renewed motion).

    (4) Nature of the proceeding: Motion to revise and revoke sentence.

    (5) Grounds raised: _____

    At the original sentencing hearing, trial counsel failed to present relevant mitigating information that might well have persuaded the court to order that the sentence in this case run concurrently with, rather than consecutive to, sentences defendant was already serving.

_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❑ No ☒

(7) Result: Motion denied. _____

(8) Date of result (if you know): April 23, 2004. _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

    (1) First petition:    Yes ☒    No ❑    (motion for new trial and reduction in verdict)

    (2) Second petition:    Yes ☒    No ❑    (motion for deposition)

    (3) Third petition:    Yes ❑    No ☒    (motion to revise and revoke sentence)

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

**Re: (2), above:** Defendant appealed the denial of his motion for new trial and "ancillary motions" to the Appeals Court. In his application for further review to the SJC, he did not specifically mention his motion for deposition. However, he contends that he adequately raised the issues involved in that motion because, before ruling on the application, the SJC took the unusual step of directing defendant to submit the trial and motion transcripts and the parties' Appeals Court briefs. The SJC therefore had a fair opportunity to consider the trial judge's denial of the motion for deposition.

**Re: (3), above:** Defendant did not appeal from the denial of his motion to revise and revoke sentence, because he saw no grounds for an appeal.

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** By instructing incorrectly on (a) the relationship between self-defense and murder; (b) the relationship between use of excessive force in self-defense and murder; and (c) the definition of voluntary manslaughter, the trial court undermined defense counsel's closing argument so significantly as to have violated defendant's Sixth Amendment right to present closing argument *(Herring v. New York,* 422 U.S. 853 (1996)).

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The government's evidence at trial suggested the following: as a car with several men drove past defendant and a friend, defendant tried unsuccessfully to fire at the car (his gun jammed). Defendant's friend, however, fired into the car, killing a passenger. At trial, defendant contended that if he had indeed been engaged in a joint venture to shoot at the car, then he had acted in self-defense: the men in the car had driven by in order to shoot at defendant and his friend. The trial judge promised, per defendant's request, to instruct jurors on self-defense, on the use of excessive force in self-defense, and on voluntary manslaughter (the third, on the theory that murder, under Massachusetts law, is mitigated to voluntary manslaughter if the defendant acted with excessive force in self-defense). Defense counsel then gave his closing argument, which relied on theories of self-defense and the excessive use of force therein. The trial judge proceeded to garble the instructions on  the relationship between self-defense and murder, the relationship between excessive use of self-defense and murder, and the definition of voluntary manslaughter. The faulty instructions contradicted and therefore undermined counsel's argument.

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

___ N/a (state remedies exhausted). _____

(c) **Direct Appeal of Ground One:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☒   No ❑

   (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _ N/a. _____

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ☒   No ❑

   (2) If your answer to Question (d)(1) is "Yes." state:

   Type of motion or petition: <u>Motion for new trial and reduction in verdict.</u> _____

   Name and location of the court where the motion or petition was filed: _____

   __ Plymouth County (Massachusetts) Superior Court,  72 Belmont St., Brockton, MA 02301. _____

Docket or case number (if you know): _ PLCR1998-00934. _____

Date of the court's decision: _ June 6, 2002. _____

Result (attach a copy of the court's opinion or order, if available): Motion denied. See judge's memorandum,
below, at Petition Appendix 16-18.

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☒  No ❑

(4) Did you appeal from the denial of your motion or petition?

    Yes ☒  No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☒  No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

 Massachusetts Appeals Court, John Adams Courthouse, One Pemberton Square, Boston, MA 02108.

Docket or case number (if you know) 2001-P-0312 (consolidated appeal from conviction and denial of new-trial and
ancillary motions).

Date of the court's decision: Nov. 6, 2003. _____ Conviction and denial of motions affirmed.

Result (attach a copy of the court's opinion or order, if available): See Appeals Court order and opinion, below, at
Petition Appendix 19-27, and esp. at 22-23 (not
addressing federal constitutional claim).

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: ___ N/a. _____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative

remedies, etc.) that you have used to exhaust your state remedies on Ground One: _ N/a. _____

_____

In support of his new-trial motion, defendant presented evidence that after trial, a backseat passenger in the victim's car had confessed
that it was he, not defendant's friend, who had lethally shot the victim. This was evidence that at least one occupant of the victim's car had

**GROUND TWO:** been armed; as such, it bolstered defendant's claim to have acted in self-defense or with excessive force in

self-defense. The trial judge's refusal to grant a new trial at which defendant could present the new evidence violated defendant's federal
due process and equal protection rights, guaranteed by the Fourteenth Amendment to the United States Constitution. See, e.g., *Chambers v.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
*Mississippi,* 410 U.S. 284 (1973).

After trial, defendant learned that federal prisoner Emanuel Carapinha had made a disclosure to state and federal prosecutors about defendant's
(Mr. Melton's) case: Carapinha's fellow inmate, Edson Miranda, who had been a back-seat passenger in the victim's car in Mr. Melton's case, had
confessed to Carapinha that it was he, not defendant's friend, who had fatally shot the victim. Defendant argued in his new-trial motion that the
confession to Carapinha was new evidence (admissible under the "declaration against penal interest" exception to the prohibition on hearsay)
tending to show that at least one occupant of the victim's car was armed and therefore supporting defendant's claim of self-defense or the use of
excessive force in self-defense.

Defendant contended that he was unable, himself, to compel Carapinha (then in federal custody in Rhode Island) to appear in state court for
an evidentiary postconviction hearing. Counsel had consulted with Carapinha's attorney, however, and proffered at the new-trial hearing that if
asked, Carapinha would testify that Edson Miranda had indeed made the confession in question. Defense counsel asked the judge to order
Carapinha to answer deposition questions so stating, but the judge declined to do so. The judge then denied the new-trial motion, ruling that
Miranda's confession did not fall within the "against penal interest" exception and was therefore inadmissible.

(b) If you did not exhaust your state remedies on Ground Two, explain why: Defendant raised this issue in the Massachusetts Appeals Court but did not argue it in his application for further appellate review in the SJC. He nevertheless asserts that he adequately exhausted his state remedies. Before ruling on defendant's application for further review, the SJC took the unusual step of asking counsel to submit the Appeals Court briefs and the complete transcripts of the trial and new-trial motion. The SJC therefore had a fair opportunity to consider defendant's new-evidence claim.
A more detailed explanation appears in defendant's memorandum of law, to be filed later, in support of this petition.

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction. did you raise this issue?

Yes ☒x   No ☐ (Raised issue in consolidated appeal from conviction and denial of new-trial and ancillary motions.)

(2) If you did **not** raise this issue in your direct appeal, explain why: _N/a._

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

state trial court?

Yes ☒x   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Motion for new trial and reduction in verdict_

Name and location of the court where the motion or petition was filed:

_Plymouth County (Massachusetts) Superior Court, 72 Belmont St., Brockton, MA 02301._

Docket or case number (if you know): _PLCR 1998-00934._

Date of the court's decision: _June 14, 2002._

Result (attach a copy of the court's opinion or order, if available): _Motion denied. See judge's memorandum, below, at Petition Appendix 1-18 and esp. at 10-14 (discussing new-evidence claim)._

(3) Did you receive a hearing on your motion or petition?

Yes ☒   No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒x   No ☐ (The Appeals Court consolidated defendant's direct appeal with his appeal from the denial of the new-trial and ancillary motions.)

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒x   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_Massachusetts Appeals Court, John Adams Courthouse, One Pemberton Square, Boston, MA 02108._

Docket or case number (if you know): 2001-P-0312 (consolidated appeal from conviction and denial of new-trial and ancillary motions).

Date of the court's decision: __Nov. 6, 2003.__

Result (attach a copy of the court's opinion or order, if available): _____

__Conviction and motions affirmed. See Court's order and opinion, below, at Petition Appendix 19-27 and__
__esp. at 25-26 (discussing new-evidence claim).__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: __N/a.__

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: __N/a.__

**GROUND THREE:** __N/a.__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏  No ❏

(2) If you did **not** raise this issue in your direct appeal, explain why: _____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ❑     No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ❑     No ❑

(4) Did you appeal from the denial of your motion or petition?

Yes ❑     No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑     No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** __N/a._____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑    No ❑

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

    state trial court?        Yes ❑ No ❑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑    No ❑

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❑    No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏ No ❏

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?       Yes ☒   No ❏

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: ___ N/a. _____

_____

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? ₐNo. If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ___ N/a. _____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?       Yes ❏   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _N/a._____

_____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     Yes ❑     No ☒
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _N/a._____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:
    (a) At preliminary hearing: __N/a._____

_____

    (b) At arraignment and plea: Attorney Kenneth J. Elias, 1063 N. Main Street, Brockton, MA 02401.

_____

    (c) At trial: _Attorney Elias, above._____

_____

    (d) At sentencing: _Attorney Elias, above._____

    (e) On appeal: ___Attorney Ruth Greenberg, 505 Paradise Road, #166, Swampscott MA 01907, and Attorney Anne Gowen (undersigned counsel on this petition), 64 Princeton-Hightstown Rd., # 127, Princeton Junction, NJ , 08540.

    (f) In any post-conviction proceeding: _Attorneys Greenberg and Gowen, above._____

_____

    (g) On appeal from any ruling against you in a post-conviction proceeding: _____
    _Attorneys Greenberg and Gowen, above._____

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?              Yes ❑   No ❑

Maybe. The Massachusetts Department of Correction "paroled" defendant from an earlier-imposed, unrelated sentence to the sentence in this case. If in the future the DOC finds defendant to have  "violated parole" (while incarcerated on the sentence in this case), the DOC could require defendant, *after* he finishes serving the sentence on this case, to serve the time remaining on the earlier sentence.

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: Brockton (Massachusetts) District Court, No. 9815 CR 2639.

(b) Give the date the other sentence was imposed: July 21, 1998.

(c) Give the length of the other sentence: Total length: ten years (five counts; defendant received two years on each; sentences NOT to be served concurrently).

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ☒  No ☐

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Defendant's conviction became final on Jan. 29, 2004 (at the earliest), when the Massachusetts Supreme Judicial Court denied his application for further appellate review. The ninety-day period for filing a petition for a writ of certiorari in the U.S. Supreme Court expired on April 28, 2004. One year from that date is April 28, 2005, and defendant is filing this petition on or before that date.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Therefore, petitioner asks that the Court grant the following relief: _____

____(1) permit him to be heard on this petition, through counsel; (2) allow this petition for a writ of habeas corpus ____
and order him released._____

or any other relief to which petitioner may be entitled.

Signature of Attorney (if any)

Anne E. Gowen

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct

~~and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on~~

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx(month, date, year).~~  (Petition was mailed by counsel, not
petitioner.)

Executed (signed) on _____ (date).

Signature of Petitioner

_____

*(...continued)
(A) the date on which the judgment became final by the conclusion of direct review or the
expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in
violation of the Constitution or laws of the United States is removed, if the applicant was
prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the
Supreme Court, if the right has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward
any period of limitation under this subsection.

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _ N/a.

6-14-02

# COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT
CRIMINAL ACTION
NO. 100934

## COMMONWEALTH

v.

## LAJUAN MELTON

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL

This matter is before this court on the defendant's motion for a new trial. After hearing
and review of parties' submissions and for the following reasons, the defendant's motion for a
new trial is **DENIED**.

## BACKGROUND

### I. Procedural Background

On May 22, 1998, a grand jury indicted the defendant, Lajuan Melton ("the defendant"),
of second degree murder in the death of Alexander Colon ("Colon" or "the victim"). On
September 30, 2000, a Plymouth County jury convicted the defendant of second degree murder
(Connolly, J). The defendant filed his brief in the Appeals Court on June 13, 2001, claiming error
in a ruling that would have allowed four convictions to be used against him if he testified; error
in the instruction on excessive force in self defense; and Judge Brady's denial of the motion to
suppress. On August 13, 2001, the defendant filed a motion for a new trial claiming (1) error in
the ruling that would have allowed four prior convictions to be used against him if he chose to
testify, and that because of this ruling, the defendant chose not to testify; and (2) that the judge
used prejudicial inflections in his voice when instructing the jury and then denied the defendant's
request for a contemporaneous instruction. On October 3, 2001, the defendant filed a motion to

reduce the verdict from murder to manslaughter, making an additional claim that (3) there is

newly discovered evidence showing that Edson Miranda, and not the defendant, killed the victim.

II. Factual Background

The court adopts the following relevant facts presented in the Commonwealth's

opposition to the defendant's motion for a new trial. On March 31, 1998, the defendant and

Donald Averett ("Averett") were outside of 918 Warren Avenue in Brockton. At about 6:30

p.m., Claudio Miranda ("Miranda") drove his sister's car south on Warren Avenue, passing

number 918. Alexander Colon was in the front passenger seat and two unidentified young

Hispanic men sat in the back seat. Miranda then turned around on some side streets and then

drove north down Warren Avenue, again passing number 918. The music in the car was turned

up loud, but Miranda heard gun shots and Colon said he was shot. The back window of the car

was half shot out. Miranda brought Colon to Brockton Hospital where the two unidentified

young Hispanic males pulled the victim, who appeared lifeless, from the car. The unidentified

men told a paramedic, Heather Hartford, who was arriving at the hospital driving an ambulance,

that Colon had been shot. Colon's pulse was weak and one of the unidentified Hispanic males

yelled to Colon, "Don't die, man, you can't, if you die . . . I'm going to get those niggers."

The victim, Colon, was 19 years old and sustained a gunshot wound to his upper left mid-

back, which fractured his first left rib in the back and lacerated two major blood vessels to his

left lung. Despite extensive surgical intervention, Colon died of his injury the next day, April 1,

1998. The entrance of the wound was "atypical" meaning that it resulted from a "tumbling

bullet" that hit and/or went through another object ricocheting before striking the victim.

Initially, the defendant admitted to being in the area, but denied that he shot at the car.

Instead, he blamed two others, one of which was incarcerated at the time of the shooting, and

2

another whose alibi checked out. After blaming two other individuals for the shooting, the

defendant told police, in a taped confession, that both he and Averett had shot at the car, but that

he had only shot twice while Averett shot more than twice and was still shooting when the

defendant stopped. The defendant said he did not know whether he hit anything and said he had

probably just hit the building. There was no evidence that either building in the area was hit by a

bullet.

### DISCUSSION

I. Standard of Review under Mass. R. Crim. P. 30(b)

Massachusetts Rules of Criminal Procedure 30(b) provides that a judge may grant a new

trial "at any time if it appears that justice may not have been done." A judge has sound

discretion over the disposition, except where the trial was infected with prejudicial error.

Commonwealth v. Moore, 408 Mass. 117, 125 (1990). However, the doctrine of waiver may

"foreclose a defendant from raising an objection because, while he might have raised it earlier

and thus had it resolved during the normal course of adjudication, he does not raise it until after

the regular process had already run its course." Commonwealth v. Amirault, 424 Mass. 618, 637

(1997)

II. Prior Convictions

During the trial, the Commonwealth indicated its intention to impeach the defendant with

four prior convictions if the defendant testified. The issue was raised by the defendant filing a

motion in limine asking the court to exclude all prior convictions due to their prejudice to the

defendant. The four convictions stemmed from an incident involving another drive by shooting

that occurred the next day in a totally separate incident, namely April 1, 1998. The defendant

fired a single shot towards a vehicle with four persons inside, and was subsequently convicted of

four counts of assault by means of a dangerous weapon. He used a glock 9mm gun on the back-to-back days. The defendant filed a motion in limine asking the court to exclude the use of all prior convictions due to their prejudice to the defendant. The court, after hearing and in its discretion, denied the motion as to the four convictions of assault with a dangerous weapon. Defense counsel then indicated that the defendant would not testify because of the prejudice against the defendant that said convictions would create. It is noted that neither counsel informed the court at the time of the hearing that these convictions were on appeal. Even if the court had known of the pending appeal, the court would have allowed the admission of the prior convictions for impeachment purposes. The four convictions of assault with a dangerous weapon were affirmed by the Appeals Court on January 2, 2001. Commonwealth v. LaJuan Melton, 50 Mass. App. Ct. 637 (2001). The Supreme Judicial Court granted further appellate review at 434 Mass. 1102 (2001). On March 13, 2002, the Supreme Judicial Court affirmed the four convictions of assault and battery with a dangerous weapon at 436 Mass. 291 (2002).

The defendant argues that the admissions of state district court convictions prior to the exhaustion of direct appeal, although permitted by statute, violates state due process guarantees. Neither the U.S. Supreme Court or the First Circuit supports the broad assertion that the admission of state district court convictions prior to the exhaustion of direct appeal, violates state due process guarantees. See Loper v. Beto, 405 U.S. 473 (1972); United States v. Penta, 475 F.2d 92 (1973). Rather, the U.S. Supreme Court and the First Circuit have all recognized that certain, specific types of prior convictions are constitutionally invalid and must be set aside unless they are harmless error. Penta, supra at 96 (holding that the use of prior convictions which ultimately resulted from evidence obtained in an illegal search and seizure, were not constitutionally void, and even if they were, their use constituted harmless error); Loper, supra at

4

102

483 (holding that "the use of [uncounseled] convictions constitutionally invalid under <u>Gideon</u> v. <u>Wainright</u>, [372 U.S. 335] to impeach a defendant's credibility deprives him of due process of law").

"It has been held that the use of convictions for impeachment does not infringe either the state or federal constitutional rights of criminal defendants. <u>Commonwealth</u> v. <u>Drumgold</u>, 423 Mass. 230, 249 (1996)" Liacos, Handbook of Massachusetts Evidence, 7th Ed., § 6.10.2, pp. 314-315. In order to be used to impeach a conviction must be a final judgment. <u>Wilson</u> v. <u>Honeywell</u>, 409 Mass. 803, 808-809 (1991) (not permitting a district court conviction to be used, from which a trial <u>de novo</u> was claimed. The claim of the jury trial vacated the district court conviction and rendered the conviction a nullity). However, there are four convictions that were pending in the Appeals Court at the time of trial. In <u>Forcier</u> v. <u>Hopkins</u>, 329 Mass. 668, 670-671 (1953), the Court discussed the terms 'conviction' and 'final judgment.' "[T]he term 'conviction,' as used in this statute [ch. 233, § 21] means a judgment that conclusively establishes guilt after a finding, verdict or plea of guilty . . . In a criminal case the sentence is the judgment. The sentence is not vacated by its suspension."

In <u>Commonwealth</u> v. <u>Jackson</u>, 45 Mass. App. Ct. 666, 670-671 (1998), the Appeals Court discussed M.G.L. c. 233, § 21 and the definition of the word 'conviction' as used therein, stating:

> "as discussed in analogous precedent, a conviction occurs when there has been a finding of guilty by a jury . . . We see no reason to give the word 'conviction' as used in ch. 233, § 21, second paragraph, a meaning different from that discussed in the analogous precedents."

Here, there were four convictions that the court in its discretion indicated that it would allow their use for impeachment. If requested by the defendant the court would have allowed a request to "sanitize" their use by striking the date of the offense. From a practical point of view,

5

103

it seems to the court that there was not any real likelihood of the defendant testifying in this case. The defendant voluntarily gave a recorded taped statement to the police, admitting his involvement in this shooting and the tape was played and offered into evidence.

## III. The Judge's Supposed Voice Inflections

Next, the defendant argues that the judge exhibited inflections in his voice when instructing the jury, indicating to the jury that he favored the Commonwealth's case, and that as a result of these supposed prejudicial voice inflections, he requested and was denied a contemporaneous instruction. The defendant points to Commonwealth v. Moore, 52 Mass. App. Ct. 120 (2000), for the proposition that a contemporaneous instruction is *required* to remedy voice inflections that may indicate bias. The defendant, however, is mistaken that Moore requires that a judge give a contemporaneous instruction. See id. at 129. Rather, the Court, in a decision that proceeded the defendant's trial, simply *suggests* that judges should give such an instruction. Id.[1] Moreover, while counsel did raise an objection to the judge's voice inflections on September 29, 1999, the record does not indicate, nor does the court recall, that defense counsel ever, at any time, requested such a contemporaneous instruction. Despite the absence of such a request, on September 29, 1999, the judge did give the following instruction in the final charge to the jury: "If I have said or done anything to cause you to believe that I have any opinion concerning the facts of this case, then you are mistaken, because I am totally neutral on this issue. It is your decision, not mine, to determine whether the Commonwealth has met its burden of proving the defendant's guilt."

---

[1]As a practical matter, this court now gives the suggested instruction in every civil and criminal case tried before this judge.

104

After a further colloquy on the matter (voice inflections), on the court's own motion the court on September 30, 1999 around 9:18 a.m., at the end of answering a question from the jury stated as follows: "Please do not hesitate to ask any questions concerning any of the law. Of course, as to the facts, I cannot answer any questions as to the facts, because that is your function and your function only. I have absolutely no position whatsoever on what the facts are in this case. I am neutral on trial issues, and that is solely and exclusively your concern." (p. 5-18). The jury returned the verdict that day at 2:10 p.m.

Defense counsel never requested to the court a contemporaneous instruction on September 30, 1999. In fact, the only conversation regarding a contemporaneous instruction occurred on the last day of the trial, September 30, 1999, when the judge, himself, raised the issue of his voice inflection. Defense counsel then misrepresented to the court that he has asked for such a curative instruction the day prior, when in fact, according to the record, he had not.[2] At that point, the judge, responding to defense counsel's misrepresentation, asked, "And what do you want me to do now?," to which defense counsel responded, "at this point nothing, Judge."[3]

A hearing was held on this motion at Suffolk Superior Court, on February 4, 2002, with the defendant present and on the stenographic record. In said motion for new trial, defendant's appellate counsel, Ruth Greenberg, Esq. included the following in the defendant's motion for a new trial:

---

[2]On September 30, 1999, defense counsel stated to the court that on September 29, 1999, "all I asked you to say to the jury was, If I seemed to be emphasizing one part over another, that's merely a delivery and not an intention. That's all I asked."

[3]Defense counsel continued, I asked yesterday. I don't want to emphasized it any further today to put it in their mind that there's something unusual about the matter. So having asked and having not received it yesterday, I don't want it today."

1. The court's use of a voice inflection which may or did disparage the defendant's rights and defenses (parg. 2 of the defendant's motion);

2. The court "put the weight of his authority in the balance against the accused" (parg. 3 of said motion);

3. The court's voice inflections created selective overemphasis on some portions of the charge (parg. 3 of said motion); and

4. The defendant's counsel requested a "contemporaneous instruction" that voice inflections should not be considered, on September 29, 1999.

The court asked Attorney Greenberg on what facts or knowledge that she based the four above assertions. Attorney Greenberg indicated that she only read the record and based it on defendant's trial counsel's (Kenneth Elias, Esq.) comments on the record. (see 4-123 to 4-125 and 5-6 to 5-11). Attorney Greenberg indicated at that time that she had no other basis to make claims #1 to #4 inclusive. The court asked Attorney Greenberg whether she ever discussed the matter with trial counsel, Attorney Elias, and she stated, "no." Soon after the hearing, within a matter of weeks, Attorney Greenberg sent a hand scribbled affidavit from Attorney Elias indicating that he requested a contemporaneous instruction on the voice inflections off the record or in chambers on September 29, 1999. The court gives no credibility to the affidavit by Attorney Elias. The court specifically remembers that the request was not made on September 29, 1999. (4-123 to 4-125). If it had been made, there simply would be no reason for the court to revisit the subject on September 30, 1999. (5-6 to 5-11).

Finally, much has been said in the defendant's motions that a tape recording of part of the charge has been lost or destroyed. The court, at the time of the charge, indicated that it would tape record the charge, and give the tape and a tape recorder to the jury. see: <u>Commonwealth v. Baseler</u>, 419 Mass. 500, 506 (1995). However, due to the court's error, it turned off the tape

8

106

recorder due to a side bar conference and failed to turn it back on when it went to finish the charge. Under Commonwealth v. Baseler, the Court could not send it to the jury for use in deliberations because it did not contain the complete charge. Thereinafter, it became lost. Defense counsel argues as follows: "The tape of the instructions at this trial being lost or destroyed . . . the door is open to conflicting versions of what occurred at trial and a miscarriage of justice results."

At said hearing, the court asked Attorney Greenberg if she had bothered to contact the court reporter, Ms. Regina M. Griffin, so that she might listen to the tape containing the charge. The court reporter here uses a two track system - one of which is a direct recording of the court addressing the jury. Attorney Greenberg indicated that she had not - even though her filings indicate that she did check with Ms. Griffin to determine the accuracy of a few words in the transcript.

Prior to the hearing, the court obtained the tapes of the complete charge. The court informed the parties that three copies of the tapes would be made through the Administrative Office of the Trial Court, and a copy of same would be supplied to both counsel, with another copy being filed with the Clerk of the Appeals Court. The Appeals Court and the Supreme Judicial Court may, of course, listen to the tapes. The court believes it reflects a fair and moderate tone in the delivery of the charge, notwithstanding the defendant's claim that the court (1) disparaged the defendant's rights and defenses, (2) put the weight of his authority in the balance against the accused and (3) created selective overemphasis on some portions of the charge. Accordingly, after reviewing the record and the enclosed recordings (two tapes), this court finds no evidence that a contemporaneous instruction was requested on September 29, 1999 or required and that the court's tone or inflection was not improper in the slightest.

107

Petition · Appendix

## IV. The "Newly Discovered Evidence" claim under Mass. R. Crim. P. 30(b)

The defendant alleges that there is newly discovered evidence, pursuant to Mass. R. Crim. P. 30(b), that shows that Edson Miranda ("Miranda"), and not the defendant, killed the victim by shooting a gun inside the car, and that Miranda made this admission against his penal interest.

The issue arises from an interview with a person known as Emmanuel Caraphina, conducted by the Assistant United States Attorney, Denis Cooper, on Tuesday, June 26, 2001 together with, among others, the Massachusetts State Police and the ATF. The statements were given under a proffer agreement signed by the Plymouth County District Attorney's Office. A five page report dated June 27, 2001, of this meeting was written up by State Police Trooper, John P. Duggan of the Detective Unit-Plymouth County District Attorney.

Mr. Caraphina stated that he was at the Plymouth House of Correction and was placed in a cell with Edson Miranda. Caraphina stated that the lawyer representing the defendant visited Miranda. (It was acknowledged by Attorney Greenberg, at the hearing on this motion, that she was the attorney that visited Caraphina). Miranda allegedly told Caraphina that the lawyer (for the defendant) said that she knew that Miranda shot Colon through the seat of the car and that the shooting was an accident. "The lawyer wanted Miranda to come forward and testify to that. The lawyer reportedly told Miranda that he would not get into trouble because it was an accident."

Further, Caraphina stated that Miranda, in conversation, admitted to him that he shot Colon through the seat by accident. Miranda allegedly told Caraphina that he was not going to admit to the shooting.

108

These statements allegedly made by Caraphina are directly contradicted by the defendant's statements to Lt. Crisp, where the defendant confessed to the shooting and his involvement in it.

On the next day, July 29, 2001 at 6:30 p.m., State Police Lieutenant, Michael Crisp and Brockton Detective Reardon interviewed Miranda. When told of what Caraphina said the day before, the report of Lieutenant Crisp, states as follows:

> "Miranda told us this was all bullshit that he wasn't in the car and that Colon was his boy. He said some lady attorney came into the jail a couple of months ago representing LaJuan Melton and tried to peg this "bullshit" on him . . .. She told him some "dude" who was getting deported told her that Edson accidently shot Colon. Miranda told us that he told her this was "bullshit" and told her he didn't even know "who the fuck you are."

Further Miranda said "that no one with any street smarts would ever get into the back seat of a two door car like Cardi's with a gun because then you'd be trapped if the cops stopped the car. Miranda volunteered to take a lie detector test to show that he has nothing to do with Colon being shot and that "Luan got people behind the scenes trying to get him off the murder wrap any way they can."

There have been no affidavits filed in support of or in opposition to this motion, and the above references came from the five page State Police report from the interview at the U.S. Attorney's office dated 6/27/01 and the three page Police Report dated 7/5/01, copies of which are attached. Mass. R. Crim. P. 30(c)(3) requires the filing of affidavits concerning the facts on which the moving or opposing parties rely. However, assuming Caraphina had signed an affidavit attesting to the above statements attributable to him, the court would find the affidavit not credible.

109

A defendant moving for a new trial on the ground of newly discovered evidence must show both that the evidence is newly discovered and that it is material and credible, or carries a measure of strength in support of the defendant's position, and that it casts real doubt on the justice of the conviction. Commonwealth v. Grace, 397 Mass. 303, 307 (1986). Such evidence must be based in evidence unknown and unavailable at the time of trial despite diligence of the moving party. Commonwealth v. Williams, 399 Mass. 60, 64 (1987); Commonwealth v. Markham, 10 Mass. App. Ct. 651, 654 (1980). "Merely introducing another possible suspect, without substantial admissible evidence that this person, and not the defendant, may have committed the crime, does not warrant a new trial." Commonwealth v. Lopez, 433 Mass. 406, 417 (2001).

The defendant has not met his burden of showing that the Miranda information was unknown and unavailable at the time of his trial despite his diligence. To the contrary, there is evidence that the defendant had considered whether the bullet that killed the victim could have come from the backseat of the car, but had chosen, nonetheless, for strategic reasons, not to use the information [4] The fact that the defendant had made a taped confession that the jury would hear, along with that the defendant had previously accused three other people of the deadly shooting, indicate that the decision not to use the suspected Miranda information as part of his defense was strategic.

---

[4] In the cross examination of James Weiner, M.D., the medical examiner, defense counsel asked Dr. Weiner whether the bullet "Could have been fired from somebody in the backseat?," to which Dr. Weiner replied, "Yes sir." Defense counsel then asked, "And would have-could have made the same entrance into the upper back and followed the same path?," to which Dr. Weiner replied, "Yes sir."

12

110

Moreover, such information was and is inadmissible hearsay as it does not fall under any exception to the hearsay rule. The defendant claims that the Miranda information is admissible as a statement made against his penal interest. Miranda's alleged admission, however, was not made against his penal interest. "A statement is admissible as against penal interest if it meets three tests. '[1] [T]he declarant's testimony must be unavailable; [2] the statement must so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true; and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.'" Commonwealth v. Reynolds, 429 Mass. 388, 401 (1999), quoting Commonwealth v. Drew, 397 Mass. 65, 73 (1986) (citations omitted); see also Commonwealth v. Gagnon, 408 Mass. 185, 193-194 (1990), denial of post-conviction relief affirmed, 430 Mass. 348 (holding that an out-of-court statement made by a person that he, and not the defendant actually committed the crime is admissible where the defendant's testimony met all three tests). Additionally, a judge may consider the timing of the declaration; the relationship between the declarant and the witness; the reliability and character of the declarant; whether the statement was made spontaneously; whether other people heard the statement; and whether there was any motive for the declarant to misrepresent the matter. Drew, 397 Mass. at 76.

The defendant has failed to meet his burden of establishing that Miranda made a statement against his penal interest. The statement has not satisfied any of the three elements of the test required to be admitted as a statement against penal interest. First, there is no evidence that Miranda was unavailable to testify at trial. The defendant has failed to show that Miranda could not have been procured to testify. Miranda has adamantly and repeatedly denied that he was even inside the subject car, let alone that he fired a shot from the backseat of the subject car.

His adamant denial of the crime to the police suggests that he would have been available to testify if he were accused. Secondly, there is evidence that if Miranda did in fact make such a statement of culpability, he did so under the impression that he would not be subject to criminal liability.[5] Therefore, the defendant has failed to show that the statement was truly made against his penal interest. Third, the defendant has failed to establish that Miranda's statement is clearly corroborated. Nobody, but the informant, Caraphina, heard Miranda's purported statement and nobody else has even placed Miranda in the subject car. Further, the statement reported by Caraphina lacked detail and credibility because of his possible motives to misrepresent the matter. Further, Caraphina, a federal informant, may have had the motive of "saving his own skin" from the federal charges he faced. Finally, in considering the relationship between Caraphina and Miranda, there is evidence, according to the statement Miranda made to police that Caraphina may have been friends with the defendant. The defendant, then, has failed to show that Miranda made a statement against his penal interest or that the purported statement is otherwise admissible.

---

[5]According to the informant, Caraphina, the defendant's attorney told Miranda "he would not get in trouble because it was an accident."

113

## ORDER

For the forgoing reasons, it is hereby **ORDERED** that the defendant's Motion for a New

Trial is **DENIED** on all grounds asserted.

*Thomas G. Connolly*
Thomas E. Connolly
Justice of the Superior Court

**Dated**: June  6 , 2002

113

6-14-02

58

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
TRIAL NO.: 2001-P-312

PLYMOUTH, ss.

COMMONWEALTH OF MASSACHUSETTS

V.

LAJUAN MELTON

## AMENDMENT TO DEFENDANT'S MOTION FOR NEW TRIAL AND REDUCTION IN VERDICT

COMES NOW LaJuan Melton, by counsel, and respectfully requests this Court to allow him to supplement his motion for new trial and for reduction in verdict to manslaughter with the claim asserted herein, a claim relying on newly discovered evidence provided by the Commonwealth on October 5, 2001, in response to a request for exculpatory materials.

As grounds:

1.   The defendant was charged and convicted of the murder of Mr. Colon.  To this charge at trial, the defendant asserted a claim of self-defense/provocation/excessive force premised on report of a gun in the car in which the deceased was a passenger.

2.   The material provided on October 5, 2001 by the Commonwealth, attached in entirety, provides evidence at p. 4, ¶¶ 20-21, that the deceased was in fact killed by another passenger, Edson Miranda, shooting a gun inside the car. Edson Miranda made this admission against interest to

A TRUE COPY ATTEST

_Frances R. Powers_
CLERK

37

1



6-14-02

74

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

JUN 14 2002

~~Fred R Powers~~
CLERK

**SUPERIOR COURT DEPT.
CRIMINAL ACTION
NO.: 2001-P-312**

COMMONWEALTH OF MASSACHUSETTS

vs.

LAJUAN MELTON

A TRUE COPY ATTEST

~~Francis R. Powers~~
CLERK

### MEMORANDUM AND ORDER ON
### DEFENDANT'S MOTION FOR NEW TRIAL AND REDUCTION IN VERDICT

The Court allows the defendant to file his amendment to Defendant's Motion for a New

Trial and Reduction in Verdict.

The Court erroneously submitted this case to the jury on a lesser included charge of

involuntary manslaughter and on self-defense. It was discussed extensively with counsel in the

charge conference on September 29, 1999, and the Court "in an exercise of caution" submitted

those issues to the jury. This is a case of two men taking their guns out and blasting away at a

passing car. There simply is no evidence they were threatened in any way by anyone.

It is noted by the Court that it inadvertently, but erroneously, misspoke when it stated in

its final charge at 4-113 of the record that "If the defendant used excessive force, it is reduced to

a second degree murder." The correct charge should have been "If the defendant used excessive

force, it is reduced to manslaughter." The Court correctly charged the jury on the exact same

issue appropriately two other times (e.g. pg. 4-100, l. 14-20; 4-102 to 4-106, l.4). There is

absolutely no evidence, admissible or credible, by affidavit or otherwise, that indicates that

Edson Miranda was in the subject car at the time of the shooting.

The Court therefore assumes that this Motion to Reduce the Verdict from second degree

murder to manslaughter is being made pursuant to Mass. R. Crim. P. 25(b)(2).  See

Commonwealth v. Woodward, 427 Mass. 659, 666-672 (1998).  The Court will not deal with

that portion of the motion that requests a new trial as this issue has been dealt with in the Court's

decision on the Motion for a New Trial.

After consideration, and a reading of the entire trial transcript, Motion for a Reduction in

Verdict from Second Degree Murder to Manslaughter is **DENIED**.  In light of the facts of this

case, there is no reason to do so.

By the Court,

Thomas E. Connolly
Justice of the Superior Court

Dated: June 6 , 2002

App. 33

# Commonwealth of Massachusetts

### Appeals Court for the Commonwealth

### At Boston,

In the case no. 01-P-312

COMMONWEALTH

*vs.*

LAJUAN MELTON.

Pending in the <u>Superior</u>

Court for the County of <u>Plymouth</u>

Ordered, that the following entry be made in the docket:

Judgment affirmed. Order denying motion to expand record affirmed. Order denying motion for a reduction in verdict affirmed. Order denying motion for new trial affirmed. Order denying motion for reconsideration and reconstruction of the record affirmed.

By the Court,

_____, Clerk
*First Assistant*

Date <u>November 6, 2003</u>

NOTE:

The original of the within rescript will issue in due course, pursuant to M.R.A.P.23

APPEALS COURT

App. 34

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

01-P-312

COMMONWEALTH

vs.

LAJUAN MELTON.

## MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

The jury found the defendant guilty of murder in the second degree. He appeals,[1] arguing that the trial court erred in (1) deciding that the defendant's prior convictions could be admitted for impeachment purposes, thus chilling his right to testify; (2) its jury instructions on use of excessive force in self-defense in a homicide case; and (3) determining that statements the defendant made were not custodial, thus obviating the need to provide Miranda warnings. <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436 (1966). The issues arising out of the denial of his motion for a new trial[2] are that the trial court erred in (1) concluding that

---

[1] After filing his initial brief in this appeal, the defendant filed in the trial court a number of postconviction motions, including a motion for new trial. His appeal from the denials of those motions was consolidated with his direct appeal; we allowed the defendant leave to file an additional brief pertaining to these matters.

[2] Although he also purported to appeal from the orders denying "all [motions] ancillary . . . [to his new trial motion] filed and denied since his conviction," which we take to be his motions (1) to expand the record; (2) for a reduction in verdict; and (3) for reconsideration and reconstruction of the record, the defendant does not address these orders in his briefs.

App. 35

newly discovered evidence was inadmissible; (2) ruling that his prior convictions, which at the time still were on appeal, could be used for impeachment purposes; and (3) not giving the jury an instruction concerning the tone of the judge's voice. We affirm.

Prior convictions. The defendant contends that his right to testify was chilled because the trial court improperly denied his motion in limine to prevent his prior assault by means of a dangerous weapon convictions from being used for impeachment purposes should he testify. He claims this denial was an "unprecedented abuse of discretion." (Defendant's brief: 12). We do not agree. "[A] defendant's asserted reluctance to testify, because of the likely adverse effect of his impeachment by evidence of his prior conviction, has not commended itself as raising a valid due process challenge." Commonwealth v. Chase, 372 Mass. 736, 751 (1977).

Even if the defendant did testify and the convictions were offered against him, there was no abuse of discretion. The judge carefully considered which convictions he would allow and disallow into evidence for impeachment purposes. After a hearing, he indicated that the defendant's juvenile adjudications and an adult conviction of malicious destruction of property could be admitted, rulings defense counsel acknowledged he could

---

Accordingly, we deem any argument or error related to these additional orders waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

2

App. 36

"live with" and which are not here at issue. (Tr: 3:12, 198-199). The Commonwealth agreed not to seek admission of two firearm charges, and the judge concluded that, because the remaining four assault by means of a dangerous weapon convictions were not substantially similar to the current charge of murder, they could be admitted for impeachment purposes. (Tr. 3: 203). The judge also indicated that had there been a request to sanitize those charges, he would have done so. (S.R.A. 103). Further, the assistant district attorney indicated that he would forego mentioning that the dangerous weapon at issue in the latter four convictions was a gun. (Tr. 3: 201-202). There was no abuse of discretion.[3]

Jury instruction. Even if there were an error in the self-defense instruction given, it was harmless in light of the fact that no such instruction was warranted.[4] "Because there was no

---

[3] The defendant also alleges that since the prior convictions were on appeal, it was improper to use them. First, the ability to raise the issue when the evidence wasn't used, as the defendant did not testify, is questionable. Even were we to reach the substantive issue, the defendant would fare no better. See Commonwealth v. Digiambattista, 59 Mass. App. Ct. 190, 199 (2003). Lastly, we note that his convictions were ultimately upheld on appeal. Commonwealth v. Melton, 436 Mass. 291 (2002).

[4] The defendant and Donald Averett, having heard a rumor that Claudio and Edson Miranda recently shot at a car on Progresso Street, prepared themselves by each having a gun on their person. (Commonwealth's brief: 12, citing Exhibit 20 at 17). On the day they heard the rumor, while standing outside a residence on Warren Avenue, they observed a car driven by Claudio Miranda pass by them going south. A few minutes later the car passed by them again, this time going north. (Tr. 2: 137-148).

3

## App. 37

right to self-defense, a voluntary manslaughter instruction based
on the use of excessive force in self-defense was not appropriate
either." Commonwealth v. Roberts, 433 Mass. 45, 57 (2000)
(internal quotation and editorial marks, citation omitted). See
also Commonwealth v. Curtis, 417 Mass. 619, 632-633 (1994).

Statements to police. The police interviewed the defendant,
who was incarcerated on an unrelated offense at the Plymouth
County House of Correction, as a potential witness, albeit a
reluctant one, to the shooting. While not required, out of an
abundance of caution he was provided his Miranda warnings. See
Commonwealth v. Bookman, 386 Mass. 657, 660-661 (1982). The
police returned to him when his story did not pan out. The
motion judge determined that the interviews were conducted in a
nonaggressive, informal and nonthreatening manner. The defendant
agreed each time to meet with the officers and in fact gave them
a number of leads, which turned out to be false. At no time did
the defendant refuse to be interviewed or request that the
dialogue be terminated. (R.A. 26). The police were surprised

---

There was some discussion between Averett and the defendant about
who they believed was in the car. Averett declared that the
person hanging out of the window looked like Edson and began
firing his gun at the car. (Commonwealth's brief: 13, citing
Exhibit 20 at 4-6). The defendant fired two shots at the car as
it went around the corner, traveling away from the defendant.
(Tr. 3: 27-28; Commonwealth's brief: 30, citing Exhibit 20 at 3-
4, 24). The victim, Alex Colon, a passenger in the car, was
struck by a bullet. There was no evidence that the victim, or
anyone else in the car, was armed at the time of the shooting.

App. 38

when, in giving another statement, the defendant inculpated himself, at which point the officers stopped the interview and provided the defendant with his Miranda warnings in both oral and written form. He subsequently gave a formal taped statement.

That the defendant was in custody on another matter does not compel the conclusion that he was in custody for Miranda purposes when questioned about the shooting. Commonwealth v. Larkin, 429 Mass. 426, 432-436 (1999); Commonwealth v. Girouard, 436 Mass. 657, 665 (2002). Moreover, "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Miranda v. Arizona, 384 U.S. at 478. See Commonwealth v. Caputo, 439 Mass. 153, 160 (2003).

Lastly, "[o]n review of a motion to suppress, we do not disturb the judge's findings of fact unless they are clearly erroneous . . . and accord deference to the judge's legal conclusions, but independently review the correctness of the judge's application of constitutional principles to the facts found." Commonwealth v. Sicari, 434 Mass. 732, 746-747 (2001), cert. denied, 534 U.S. 1142 (2002) (citations, internal quotation and editorial marks omitted). The trial court's determination that, in view of the totality of the circumstances, the defendant made a knowing, intelligent and voluntary waiver of his rights under Miranda was not error. (R.A. 28). See Commonwealth v. Medeiros, 395 Mass. 336, 345 (1985).

5

## App. 39

<u>Newly discovered evidence</u>. "Merely introducing another possible suspect, without substantial admissible evidence that this person, and not the defendant, may have committed the crime[], does not warrant a new trial." <u>Commonwealth</u> v. <u>Lopez</u>, 433 Mass. 406, 416 (2001). A defendant, moving for a new trial based on a claim of newly discovered evidence, must show that the evidence was unknown and unavailable at the time of trial, and that it is material and credible. <u>Commonwealth</u> v. <u>Grace</u>, 397 Mass. 303, 305-306 (1986).

Here, the defendant's "new evidence" was neither newly discovered nor credible. He alleges that after trial he learned for the first time that Emmanuel Carapinha, a cellmate of Edson Miranda, claimed, in an immunity proffer by the U.S. Attorney's office (S.R.A. 108, 117), that Edson told him that he (Edson) had accidently shot the victim from the rear seat of the motor vehicle both were in.

This information was not new. In his taped confession, wherein the defendant admitted shooting at the car, he also stated his belief that Edson was in it. Trial counsel established from the medical examiner that the bullet that killed the victim "[c]ould have been fired from somebody in the back seat." (Tr. 3: 105). For these reasons, as well as those provided by the judge in his memorandum of decision (S.R.A. 111-112), we agree that there is no new or substantial admissible

6

App. 40

evidence that Edson Miranda shot the victim.

Voice inflections.  The defendant faults the trial judge for
refusing to give an instruction that the tone of his voice during
the charge could not be considered on the issue of guilt or
innocence.  We have listened to the tape of the judge's
instructions and find no evidence of what the defendant
complains.  Additionally, the judge did provide the jury with an
appropriate jury instruction.[5]  The allegation of the defendant
on this point is baseless and frivolous.

For these reasons, as well as those essentially advanced by
the Commonwealth in its brief at pages eighteen to fifty-three,[6]
those cited by the motion judge in his memorandum of decision on
the defendant's motion to suppress statements (R.A. 18-29), and
those cited by the trial judge in his thorough and thoughtful
memorandum of decision and order on the defendant's motion for

---

[5] "If I have said or done anything to cause you to believe
that I have any opinion concerning the facts of this case, then
you are mistaken, because I am totally neutral on this issue.  It
is your decision, not mine, to determine whether the Commonwealth
has met its burden of proving the defendant's guilt."  (Tr. 4:
71-72).

[6] We note, however, that the correct volume cite for
Commonwealth v. Quinones, cited on page 43, is 414, not 14, and
the correct page cite for Commonwealth v. Hallet, cited on page
20, is 552, not 553.

7

App. 41

new trial (S.R.A. 94-113), the defendant's conviction is

affirmed.

> Judgment affirmed.
>
> Order denying motion to expand
>   record affirmed.
>
> Order denying motion for a
>   reduction in verdict affirmed.
>
> Order denying motion for new
>   trial affirmed.
>
> Order denying motion for
>   reconsideration and
>   reconstruction of the record
>   affirmed.
>
> By the Court (Rapoza, Grasso &
> Kantrowitz, JJ.),
>
> Clerk

Entered: November 6, 2003

8

# SUPREME JUDICIAL COURT
## for the Commonwealth
### Case Docket

### COMMONWEALTH vs. LAJUAN MELTON
FAR-13816

### CASE HEADER

| | | | |
|---|---|---|---|
| **Case Status** | FAR denied; recon denied | **Status Date** | 02/02/2005 |
| **Nature** | Murder2 | **Entry Date** | 12/01/2003 |
| **Appeals Ct Number** | 2001-P-0312 | **Opposition Date** | |
| **Appellant** | Defendant | **Applicant** | Defendant |
| **Citation** | 441 Mass. 1102 | **Case Type** | Criminal |
| **Full Ct Number** | | **TC Number** | |
| **Lower Court** | Plymouth Superior (Brockton) | **Lower Ct Judge** | Thomas E. Connolly, J. |

### INVOLVED PARTY

**Commonwealth**
Plaintiff/Appellee

**LaJuan Melton**
Defendant/Appellant

### ATTORNEY APPEARANCE

Gail M. McKenna, A.D.A.

Anne E. Gowen, Esquire

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 12/01/2003 | | Docket opened. |
| 12/01/2003 | #1 | FAR APPLICATION of LaJuan Melton, filed by Anne E. Gowen, Esquire. |
| 12/29/2003 | #2 | Action on application deferred. (1/5/04: Briefs/Appendix/Transcript requested from Atty. Gowen.)(Telecon 1/7/04: Atty. Gowen will send.) (1/12/04 - Material received: Defendant's Brief and Appendix, Suppl. Brief and Appendix; Commonwealth's Brief; 7 vols. of transcript (some with missing pages). NOTE: No need to return these items to counsel as they are copies. |
| 01/29/2004 | #3 | DENIAL of FAR application. |
| 12/20/2004 | #4 | MOTION to file a petition for reconsideration on denial of FAR application late, filed for LaJuan Melton by Anne E. Gowen, Esquire. (Referred to the justices) Notice sent. |
| 12/20/2004 | #5 | Petition to reconsider denial of FAR application filed by LaJuan Melton. (Referred to the justices) |
| 02/02/2005 | #6 | DENIAL of petition to reconsider denial of FAR application. |
| 02/10/2005 | #7 | Request to update docket filed by Anne E. Gowen, Esquire. *No action to be taken. |

As of 03/03/2005 01:02

# COMMONWEALTH OF MASSACHUSETTS

## SUPREME JUDICIAL COURT FOR THE COMMONWEALTH

O R D E R

It is hereby Ordered, that the following Application for Further Appellate Review be denied:

FAR-13816

**COMMONWEALTH**
vs.
**LAJUAN MELTON**

Plymouth Superior (Brockton) No. 100934
A.C. No. 2001-P-0312

By the Court,

Susan Mellen, Clerk

ENTERED:   January 29, 2004

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District **Massachusetts** |
|---|---|

| Name (under which you were convicted): **Lajuan Melton** | Docket or Case No.: |
|---|---|

| Place of Confinement: **Souza-Baranowski Correctional Center** | Prisoner No.: **W84006** |
|---|---|

| Petitioner (Include the name under which you were convicted) **Lajuan Melton** | v. | Respondent (authorized person having custody of petitioner) LOIS RUSSO, Superintendent, Souza-Baranowski Correctional Center, *and* KATHLEEN M. DENNEHY, Commissioner, Massachusetts Department of Correction |
|---|---|---|

| The Attorney General of the State of **Massachusetts, Tom Reilly** | | |

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   Plymouth County (Massachusetts) Superior Court, 72 Belmont St., Brockton, MA 02301.

   (b) Criminal docket or case number (if you know): PLCR1998-00934.

2. (a) Date of the judgment of conviction (if you know): Sept. 30, 1999.

   (b) Date of sentencing: Sept. 30, 1999.

3. Length of sentence: Life.

4. In this case, were you convicted on more than one count or of more than one crime? Yes ❑  No ☒

5. Identify all crimes of which you were convicted and sentenced in this case: _____
   _____ Murder (second-degree).

6. (a) What was your plea? (Check one)

   (1)    Not guilty ☒

   (2)    Guilty ❑

   (3)    Nolo contendere (no contest) ❑

   (4)    Insanity plea ❑

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?  N/a.