# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

LAJUAN MELTON,
    *Petitioner,*

v.

LOIS RUSSO, et al.,
    *Respondents*

———————————————————

)
)
)
)
)
)
)
)
)
)

CIVIL ACTION
NO. 1:05-CV-10905-GAO

## PETITIONER'S MOTION FOR LEAVE TO FILE
## ADDITIONAL EXHIBIT FROM STATE COURT PROCEEDINGS

Now comes Petitioner Lajuan Melton and respectfully moves the Court for leave to file an additional exhibit: namely,

**Mr. Melton's petition, in the Massachusetts Supreme Judicial Court (SJC), for reconsideration of the SJC's denial of his application for further appellate review, with accompanying materials.**

Counsel has attached the proposed exhibit to this motion.

In support of this request, Mr. Melton states:

1.    On January 10, 2006, Respondents notified the Court that they had filed, in the Clerk's Office, five exhibits: paper copies of five of the principal pleadings from the underlying state-court criminal

proceedings.  See Document # 20 (Respondent's Notice of Filing with Clerk's Office).

2.     Respondents' filing omits a sixth set of principal pleadings: Mr. Melton's petition, filed in the SJC, for reconsideration of that Court's denial of his application for further appellate review, and supporting materials (a motion for leave to file the petition, an affidavit of counsel, a memorandum of law, and a certificate of service).

3.     Mr. Melton filed the petition for reconsideration on December 20, 2004; the SJC denied it on February 2, 2005.

4.     Respondents are asking the Court to dismiss Mr. Melton's habeas petition because he failed to exhaust his federal claims in the Massachusetts courts.  Mr. Melton's reply to the motion to dismiss will rely in part on the petition for reconsideration.

5.     Therefore, Mr. Melton respectfully moves that the petition for reconsideration and its supporting materials be included among the exhibits to be reviewed by the Court in this case.

6.     The petition and its supporting materials are attached to this motion.

Respectfully submitted,

LAJUAN MELTON,

By his attorney,

_____/s/Anne E. Gowen_____
Anne E. Gowen
Mass. BBO #630486
64 Princeton-Hightstown Rd., # 127
Princeton Junction, NJ 08550
tel. 609.919.0381
fax 202.478.5203
aegowen@comcast.net

Dated:         January 13, 2006

I hereby certify, pursuant to LAR 5.2(b), that I am today serving a true copy of the above document and the proposed exhibit upon Assistant Attorney General Annette C. Benedetto, the attorney of record for Respondents and a registered ECF user, by electronically filing the document on the ECF system.

_____/s/Anne E. Gowen_____
Anne E. Gowen/

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                          SUPREME JUDICIAL COURT
                                              NO. FAR-13816

                                           APPEALS COURT
                                        NO. 2001-P-0312

                    COMMONWEALTH

                          v.

                    LAJUAN MELTON


            MOTION FOR LEAVE TO FILE LATE
            PETITION FOR RECONSIDERATION OF
    DENIAL OF APPLICATION FOR FURTHER APPELLATE REVIEW


        Lajuan Melton, the defendant in the above-entitled

case, moves pursuant to Mass. R. App. P. 2 for leave to

file, late, the accompanying petition for reconsideration

of the denial of his application for further appellate

review.

        As reason for this request, Mr. Melton states that

undersigned counsel recently learned that this Court is

now considering, in Commonwealth v. Donovan Walker, SJC-

08492 (argued Nov. 5, 2004; under advisement), an

appellate claim identical to one of Mr. Melton's.  In

both cases, the defendants claim that errors in the jury

instructions so significantly undermined their attorneys'

closing arguments as to have violated their Sixth

Amendment rights to have counsel make such arguments on

their behalf.  See Herring v. New York, 422 U.S. 853,

- 2 -

856-863, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).

Because undersigned counsel could not have learned earlier about the identity of issues between this case and Walker, Mr. Melton respectfully asks the Court for leave to file the accompanying petition for reconsideration late.

Respectfully submitted,

LAJUAN MELTON,

By his attorney,

_____

ANNE E. GOWEN
BBO # 630486
64 Princeton-Hightstown Rd., # 127
Princeton Junction, NJ 08550
Tel. 609.919.0381
Fax 202.478.5203
aegowen@comcast.net

Dated:    December 17, 2004.

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                    SUPREME JUDICIAL COURT
                                      NO. FAR-13816

                                     APPEALS COURT
                                  NO. 2001-P-0312

          COMMONWEALTH

              v.

          LAJUAN MELTON


     AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANT'S
          MOTION FOR LEAVE TO FILE
       LATE PETITION FOR RECONSIDERATION


     I, Anne Gowen, counsel for Lajuan Melton, state that

I drafted the accompanying motion for leave to file a

late petition for reconsideration, and the petition

itself, and that to the best of my knowledge,

information, and belief, all statements in those

documents are true.


     SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS
17TH DAY OF DECEMBER, 2004.


                              _____

                              Anne E. Gowen

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                          SUPREME JUDICIAL COURT
                                            NO. FAR-13816

                                           APPEALS COURT
                                          NO. 2001-P-0312

                    COMMONWEALTH

                         v.

                    LAJUAN MELTON

              PETITION FOR RECONSIDERATION OF
        DENIAL OF APPLICATION FOR FURTHER APPELLATE REVIEW

        Lajuan Melton, the defendant in the above-entitled
case, moves the Court to reconsider the denial of his
application for further appellate review.

        As reason for his request, he states that counsel
recently learned that this Court now has under
advisement, in Commonwealth v. Donovan Walker, SJC-08492
(argued Nov. 5, 2004; decision pending), an appellate
claim identical to one of Mr. Melton's: specifically,
that by erroneously instructing on the theory of defense,
the trial court violated the defendant's right,
guaranteed by the Sixth Amendment to the United States
Constitution, to closing argument by counsel.  See
Herring v. New York, 422 U.S. 853, 856-863, 95 S.Ct.
2550, 45 L.Ed.2d 593 (1975).  The Appeals Court's
memorandum of decision, issued pursuant to its Rule 1:28,
did not consider this argument and this Court denied Mr.

- 2 -

Melton's application for further appellate review before
the Walker briefs had been filed.

As further support for this request, Mr. Melton
submits the accompanying memorandum of law.

Respectfully submitted,

LAJUAN MELTON,

By his attorney,

_____

ANNE E. GOWEN
BBO # 630486
64 Princeton-Hightstown Rd., # 127
Princeton Junction, NJ 08550
Tel. 609.919.0381
Fax 202.478.5203
aegowen@comcast.net

Dated:    December 17, 2004.

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                        SUPREME JUDICIAL COURT
                                            NO. FAR-13816

                                         APPEALS COURT
                                         NO. 2001-P-0312

               COMMONWEALTH

                     v.

               LAJUAN MELTON


           MEMORANDUM OF LAW IN SUPPORT OF
           PETITION FOR RECONSIDERATION OF
    DENIAL OF APPLICATION FOR FURTHER APPELLATE REVIEW


              **STATEMENT OF PRIOR PROCEEDINGS**

     This is defendant Lajuan Melton's appeal from his
conviction of second-degree murder and from the denial of
his motion for new trial and ancillary motions in the
Plymouth County Superior Court.  The Honorable Thomas
Connolly, Jr., presided at trial and denied the new-trial
motion.  See the Appendix ("App."), below, at App.19-20
(one of the judge's two memoranda of decision on the new-
trial motion).

     The Appeals Court consolidated Mr. Melton's direct
appeal with his appeal from the denial of his new trial
motion and, on November 6, 2003, in a memorandum of
decision pursuant to its Rule 1:28, affirmed the
conviction and denial of the motion.  See App.33-41
(decision).  On January 29, 2004, this Court denied Mr.

- 2 -

Melton's application for further appellate review. App.42.

## SHORT STATEMENT OF FACTS
## RELEVANT TO THE APPEAL

On March 31, 1998, shots were fired into a car driving down Warren Street in Brockton. Alexander Colon, the front-seat passenger, was hit in the left upper back and died of his wound. T3/97, 104.[1] The prosecution alleged that Mr. Melton and his friend, Donald Averett, had fired into the car, and the jury found Mr. Melton guilty of second-degree murder as a joint venturer. T5/23.

Proof of Mr. Melton's involvement consisted almost entirely of his alleged statements to police.[2] On April 10, 1998, Mr. Melton told police that Mr. Averett was the shooter. Mr. Melton acknowledged that he, too, had fired a few shots. T3/26-28.

Ballistics evidence established that the lethal bullet, the casings found at the scene, and the bullets

---

[1]"T3" refers to volume three of the trial transcript, recording proceedings on September 28, 1999. "T4" refers to volume four (September 29, 1999); and "T5," to volume five (September 30, 1999).

[2]In the trial court and Appeals Court, Mr. Melton argued that the statements were the product of custodial interrogation during which he did not receive adequate Miranda warnings. The Appeals Court disagreed, affirming the motion judge's determination that police officers'

- 3 -

found in the car had been fired by a .380 automatic-
caliber semi-automatic pistol, not by the nine-millimeter
weapon that Mr. Melton was purportedly using. T3/157-170,
172, 180.[3] There was no physical evidence that Mr. Melton
had actually succeeded in firing any shots.

In his defense, Mr. Melton suggested that the
occupants of Mr. Colon's car were armed and that he had
acted in self-defense, or at least had used excessive
force defending himself from a reasonably perceived
threat.  See excerpt from counsel's closing argument,
below, at App. 1-11.  According to the Commonwealth's
ballistics expert, the lethal bullet could have been
fired from the backseat of the car into the front seat --
i.e., it was possible that at least one of the men in the
car had been firing a gun.

---

interviews with Mr. Melton were not custodial.
    [3]Brockton Detective Mark Reardon, who found the four
shell casings (T3/107, 112), opined that "... a .380
casing [could] be fired out of a nine[-]millimeter [gun]"
(T3/146). The Commonwealth's ballistics expert disagreed.
He testified that a nine-millimeter weapon and a .380
caliber class weapon (from which the expert concluded the
casings had been ejected) were not "capable of chambering
and/or firing the same type of ammunition" (prosecutor's
words).  On cross-examination, the expert testified
unambiguously that neither the projectiles nor the
casings could have come from a nine-millimeter gun. See
T3/180.

- 4 -

## POINT WITH RESPECT TO WHICH
## FURTHER APPELLATE REVIEW IS SOUGHT

The trial court agreed to instruct on
self-defense and voluntary manslaughter (based
on the use of excessive force in self-
defense), and trial counsel, relying on the
judge's promise, focused his closing argument
on those theories.  The three significant
instructional errors that followed undermined
counsel's argument so significantly as to have
violated Mr. Melton's state and federal rights
to closing argument by counsel.

## WHY FURTHER APPELLATE REVIEW IS APPROPRIATE

The trial judge instructed incorrectly that

1. the Commonwealth's failure to prove absence of
   self-defense would reduce a murder verdict to
   voluntary manslaughter (rather than to acquittal)
   (T4/103 (reproduced below at App.14));

2. the Commonwealth's failure to disprove the use of
   excessive force in self-defense would reduce a
   verdict from first- to second-degree murder (rather
   than to voluntary manslaughter) (T4/113 (below, at
   App.18)) (contrast, e.g., Commonwealth v. Kendrick,
   351 Mass. 203, 211 (1966)); and

3. the jury could not convict Mr. Melton of the
   lesser-included offense of voluntary manslaughter
   unless they found that he or Mr. Averett had
   "intentionally inflicted an injury or injuries
   likely to cause death upon the deceased which
   caused his death" (T4/105-106 (below, at App.15-
   16)).  (In fact, this was closer to the definition
   of involuntary manslaughter:  see, e.g.,
   Commonwealth v. Catalina, 407 Mass. 779, 783-784
   (1990) (summarizing law)).

In affirming the conviction and denial of the new-

- 5 -

trial motion, the Appeals Court agreed with the motion judge that in hindsight, the evidence did not warrant instructions on self-defense or on the use of excessive force.  App. 19 (motion judge), 36-37 (Appeals Court). Therefore, the Appeals Court opined, an error in those instructions could not have been prejudicial.  App.36-37.

The Appeals Court's analysis misses the point.  As Mr. Melton had argued in his Appeals Court brief (see excerpt, below, at App. 21-32, & esp. at 31), once the judge had agreed to instruct on the theories, counsel relied upon them in closing argument.  The judge's serious errors in defining the theories nullified central points of counsel's argument, implicitly instructing jurors that Mr. Melton's claimed defense was illegitimate.

In Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (discussed in defendant's Appeals Court brief, below, at App.31) (followed in Commonwealth v. Triplett, 398 Mass. 561, 568-569 (1986) (discussed in Mr. Melton's Appeals Court brief, below, at App.31); Commonwealth v. Cutty, 47 Mass. App. Ct. 671, 674-675 (1999); Commonwealth v. Miranda, 22 Mass. App. Ct. 10, 12 1986)), the U.S. Supreme Court confirmed that a defendant's Sixth Amendment right (made applicable to the

- 6 -

States by the Fourteenth Amendment) to the effective
assistance of counsel included the right to have counsel
make a closing argument:

> The very premise of our adversary system of
> criminal justice is that partisan advocacy on both
> sides of a case will best promote the ultimate
> objective that the guilty be convicted and the
> innocent go free. In a criminal trial, which is in
> the end basically a factfinding process, no aspect
> of such advocacy could be more important than the
> opportunity finally to marshal the evidence for
> each side before submission of the case to
> judgment.[4]

Thus, a New York statute giving a judge at a bench trial
the discretion to prohibit closing argument violated the
Sixth Amendment.[5]

This and other courts interpreting <u>Herring</u> have
recognized that not only the total denial, but also the
undue restriction on or incompetent handling of closing
argument can also violate a defendant's Sixth Amendment
right.    See, e.g., <u>Triplett</u>, 398 Mass. at 568-569
(counsel's ineffective arguments in closing "eroded any
theory of voluntary manslaughter" and "left the client
denuded of a defense" (internal quotation marks omitted);
citing <u>Herring</u> for the right to make closing argument);
<u>United States</u> v. <u>Miguel</u>, 338 F.3d 995, 997, 999, 1002
(9th Cir. 2003) (judge's decision, after argument began,

---

[4] <u>Herring</u>, 422 U.S. at 862.

- 7 -

to preclude counsel from arguing theory of defense and to
instruct jury that defense theory was unsupported by
evidence, was structural error); <u>United States</u> v.
<u>Grabiec</u>, 96 F.3d 549, 551-552 (1st Cir. 1996) (although
judge's restriction on argument not "plain error" under
<u>Herring</u>, court did not challenge appellant's premise:
that in an appropriate circumstance, restriction could
violate <u>Herring</u>).

In Mr. Melton's case, counsel argued two points in
closing:  first, that the Commonwealth had not proven
beyond a reasonable doubt the existence of an agreement
between Mr. Melton and Mr. Averett, as required for a
joint venture; and second, that Mr. Melton and Mr.
Averett had fired in self-defense (or that, in firing,
they had used excessive force in self-defense).  On the
self-defense claim, counsel's theory was that Claudio
Miranda (the man driving the car in which Mr. Colon was a
passenger) was not an innocent passerby:  rather, he and
his friends had driven down Warren Street looking for Mr.
Melton and Mr. Averett, whom they considered enemies:

> And I got to keep going back to this, do you
> really think it's a coincidence that [in] that car
> happens to be Cardi [Claudio Miranda, who testified
> against Mr. Melton] and maybe Edson Miranda?  Do
> you really think -- and Cardi says to you, I didn't

---

[5] <u>Herring</u>, 422 U.S. at 865.

- 8 -

know where I was going or who I was going with,
yet, at the EMT [i.e., when they got to the
hospital,] the way [Cardi said that] they were
going to [']kill the niggers[']?  Well, how did he
know the [']niggers['] did it?  If he didn't see
anybody, he wasn't looking for anybody, and he
don't know what happened, how in God's name did he
say, [']We're going to kill the niggers[']?  How
did he know?  Because that's why they were there in
the first place.  That's [a] pretty good indication
of why they were there in the first place, they
were looking.  They knew where they were going to
find them, and they were looking for them.
[¶]
Why?  How do I know why?  You're never going
to know why, because I don't think anybody can make
any intelligent sense of why they're out there, but
they're out there.  Maybe over something as stupid
as a girl, maybe over a question of turf, I'm in
the North Side Stars [a gang], you stay in Campello
where you belong.  You've got evidence that that
same car, maybe the same people, are involved in a
shooting earlier that day up at the Progresso
Market.  Things that these guys are all aware of
that that Cardi and that car were a dangerous
instrumentality flying around this city looking for
trouble, and they found it at this particular
location.[6]

Following arguments, the jury heard instructions

that flew in the face of counsel's suggested theory.

Contrary to counsel's claims, the judge instructed, the

Commonwealth's failure to disprove self-defense would not

require acquittal, but a verdict of manslaughter, and

failure to disprove excessive force would not reduce a

verdict to manslaughter, but to second-degree murder (the

verdict which jurors ultimately returned).  Further, the

---

[6] T4/54-56 (App.6-8).

- 9 -

judge made return of a manslaughter verdict far less likely with his incorrect instruction that such a verdict was permissible only if jurors found that Mr. Melton had intentionally battered Mr. Colon in a manner likely to cause death. Such an instruction made it impossible for jurors considering a murder verdict based on third-prong malice (which requires no intent to batter) to reduce such a murder verdict to manslaughter.

This Court may agree with the motion judge and the Appeals Court that the evidence was not sufficient in the first place to require instructions on self-defense or the use of excessive force in self-defense. Nonetheless, what happened here was unacceptable: the judge decided to give the instructions, counsel argued accordingly, and the judge proceeded to contradict counsel's argument. The erroneous instructions, like counsel's argument in Triplett, supra, implicitly "eroded [Mr. Melton's] theory" of defense, in violation of his Sixth and Fourteenth Amendment rights to have counsel make closing argument on his behalf.

This Court is currently considering an identical argument in Commonwealth v. Donovan Walker (see excerpt from Mr. Walker's brief, below, at App.46-50). Mr. Melton respectfully asks the Court to consider its

- 10 -

implications for his case as well.

<b><u>CONCLUSION</u></b>

Mr. Melton asks the Court to reconsider the denial of his application for further appellate review, and to grant him such review.

Respectfully submitted,

LAJUAN MELTON,

By his attorney,

_____

ANNE E. GOWEN
BBO # 630486
64 Princeton-Hightstown Rd., # 127
Princeton Junction, NJ 08550
Tel. 609.919.0381
Fax 202.478.5203
aegowen@comcast.net

Dated:    December 17, 2004.

- 11 -

## APPENDIX

Excerpt from defendant's closing argument......App.1-11

Excerpt from judge's charge..................App.12-18

Judge's   memorandum   of   jury-instruction   claim
.......................................App.19-20

Excerpt from defendant's first Appeals Court brief
.......................................App.21-32

Appeals Court rescript and slip opinion,
    No. 2001-P-0312 (November 6, 2003).......App.33-41

SJC order denying further appellate
    review (Jan. 29, 2004)....................App.42

SJC Docket entries, Commonwealth v. Donovan Walker,
    No. SJC-08492 (argued Nov. 5, 2004)......App.43-45

Excerpt from defendant's brief in Commonwealth
    v. Donovan Walker.......................App.46-50

- 12 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**Excerpt from trial transcript (vol. IV:  Sept. 29, 1999):**
**defendant's closing argument**

          MR. ELIAS:  Thank you, Judge.  Lajuan Melton
was not responsible for the death of young Alex Colon.
I don't think there's one amongst you that can doubt

4-46

1    that.  No weapon that he fired -- assuming he fired one,

2    killed that young boy.  I think the evidence is

3                          * * * *

10    [discussion of whether Mr. Melton's gun fired;

11    whether Commonwealth proved a joint venture]

4-51

Defendant's closing argument, continued:

****

1         I got to talk to you about self-defense. You
2 may not like this, and you may not want to hear it,
3 because you may have everything in you that says, Look,
4 this can't be tolerated in our city, we can't have these
5 kids running around with guns, and you know, we can't.
6 We can't. But we're not here to justify that or to
7 eradicate that. We're here to decide what he did that
8 day.

9         He says to you in his statement -- you'll hear
10 it, you've got it -- that, In the past I've been
11 threatened by a gun by Edson Miranda, that I've had
12 confrontations with Claudio. Now, Claudio was a piece
13 of work, wasn't he? First witness, can you believe
14 anything he said? Anything at all? Did you notice what
15 he was wearing? I didn't want to belabor it, a shirt
16 that had "NS" on it with a star on the back, but he
17 never heard of the North Side Stars. He doesn't know
18 what that is. Can you believe him? Do you believe him
19 when he says they're just driving around? I think the
20 police officer said, Playing their system. Just happen
21 to be driving where, of all the bad luck in the world,

4-52

1  Lajuan Melton and somebody that they have had problems

2  with before, including confrontations, he happens to be

3  there?  What a stroke of back luck, isn't it?  What a

4  stroke of luck that these guys firing into a car, and

5  who the heck's in the car but Cardi and -- we don't know

6  the other two in the back seat.  He's suggesting it's

7  Edson Miranda.  But you talk about bad luck.  And you

8  know it's not bad luck.  You know Cardi and them were

9  out there looking for him.  He knew it too.  When he saw

10  that car coming, it went by, and when they turned around

11  and came the other way and somebody's hanging out by the

12  window and somebody yells, They're shooting.  Police

13  officer told you he interviewed the witness who said she

14  heard them say, They're shooting, before any shots were

15  fired from the porch that she was on.

16      Now, is it appropriate?  I don't know, that's

17  for you.  The judge is going to tell you what self-

18  defense is.

19      THE COURT:  The judge is going to tell you

20  what, please?

21      MR. ELIAS:  Self-defense.

22      THE COURT:  The judge is going to -- no, the

23  judge is going to tell -- he's going to charge them on

24  the law of self-defense.

4-53

1          MR. ELIAS:  When I --

2          THE COURT:  He's not going to tell them it's

3     self-defense.

4          MR. ELIAS:  When I say tell, I mean he's going

5     to tell you what the law is on self-defense.  State of

6     mind of the defendant is very important.  Whether it's a

7     reasonable position or not is something for you to

8     believe, but if his state of mind was for me to believe

9     that I'm going to be shot at or I am being shot at, even

10    if I don't see the gun, there's somebody out there

11    shooting, and I see people coming that posed a threat to

12    me in the past, and I think they're posing a threat to

13    me now, and I reasonably believe that, and I think it's

14    by virtue of a gun and I fire the same way, you're going

15    to have to decide was that an unreasonable, was that an

16    excessive response to that?  Or was that a proper

17    response?  Should I have run and hid, should I go

18    somewhere to avoid that or -- before I fire back?

19    That's going to be a decision for you to -- to come to.

20          You know the charge is first degree murder.

21    That's about as severe as it ever gets.  There is

22    nothing more severe in this Commonwealth than first

23    degree murder.  The judge is going to charge you what it

24    takes for you to arrive at that conclusion.  The salient

4-54

1    part of it is premeditation.  Planning, thinking.  I

2    know my brother's going to argue to you that that

3    premeditation can be in an instant.  It can.  But

4    nonetheless, it has to be a determined -- made -- an

5    intelligent decision to do something in response to that

6    plan.  He may say to you, Well, to load that clip into

7    the gun is premeditation.  Baloney.  That's a reaction

8    to what he saw going on out there.  And one time he gave

9    a statement to the police he said the gun was already

10   loaded in his waistband.  Another time he said he had to

11   put the clip in.  Either way, that's all part of what's

12   going on here, that's all part of this terrible,

13   terrible situation that these kids have created in this

14   city -- maybe in all other cities.

15          The other statement might be -- he might bring

16   it for you to consider there:  We set up and we fired.

17   Well, that's an after the circumstance -- that's exactly

18   what happened.  The two of them got ready and fired back

19   thinking that they were being fired upon.  That doesn't

20   mean that somehow this was planned, that this was all

21   organized.  Do you think he'd be standing out there in

22   the middle of the street if it was planned to shoot

23   somebody when they came by?

24          And I got to keep going back to this, do you

4-55

1    really think it's a coincidence that that car happens to

2    be Cardi and maybe Edson Miranda?  Do you really think

3    -- and Cardi says to you, I didn't know where I was

4    going or who I was going with, yet, at the EMT the way

5    they were going to kill the niggers?  Well, how did he

6    know the niggers did it?  If he didn't see anybody, and

7    he wasn't looking for anybody, and he don't know what

8    happened, how in God's name did he say, We're going to

9    kill the niggers?  How did he know?  Because that's why

10   they were there in the first place.  That's pretty good

11   indication of why they were there in the first place,

12   they were looking.  They knew where they were going to

13   find them, and they were looking for them.  Why?  How do

14   I know why?  You're never going to know why, because I

15   don't think anybody can make any intelligent sense of

16   why they're out there, but they're out there.  Maybe

17   over something as stupid as a girl, maybe over a

18   question of turf, I'm in the North Side Stars, you stay

19   in Campello where you belong.  You've got evidence that

20   that same car, maybe the same people, are involved in a

21   shooting earlier that day up at the Progresso Market.

22   Things that these guys are all aware of that that Cardi

23   and that car were a dangerous instrumentality flying

24   around this city looking for trouble, and they found it

4-56

1    at this particular location.

2        I'm not going to try to belabor this.  The

3    length of time that I spend talking to you isn't going

4    to make much difference.  I know we tried the case

5    fairly quickly because there's no point in asking a lot

6    of questions when there's not a lot of information to

7    get.  But one of the things I think I have to do is to

8    try to impress upon you your significance to the

9    defendant.  A jury, except in capital cases -- a jury is

10    always the choice of the defendant's, nobody else.

11    Lajuan could have said to me if this were an appropriate

12    case -- and there's some question in this Commonwealth

13    whether this is a capital case or not, even though we no

14    longer have capital crimes, it probably is -- but in

15    most criminal cases he could have said, I don't want a

16    jury, I want a judge alone to decide the case.  John

17    Bradley can't say that, no one else can say that, only

18    he -- he has that choice.  And that's because -- and

19    it's terrible to get into fifth grade civics, but you

20    remember we fought a whole war over some of these

21    rights, to have a jury of our peers pass between us and

22    the Government, to make sure the Government doesn't

23    overstep its bounds.  The District Attorney's Office is

24    part of the executive branch of our government, not the

4-57

1  judicial. They're here to execute the laws and to seek
2  the punishment of those that break it. The judicial
3  system consists of it -- or the judge and myself. I
4  don't mean to belittle the district attorney or their
5  lawyers, they're very competent lawyers, but their job
6  is different, they're part of the executive branch of
7  this government. So we have a separation of all of
8  those branches of it. You're here to make sure that
9  this poor kid gets a fair shake by what's going on here.
10 Don't jump. Don't make that quick jump they're going to
11 ask you to jump. We can't prove what he did, but we can
12 prove what the other guy did because he told us what the
13 other guy did. It's his statement that tells you what
14 the other guy did. And nobody's proved that that's not
15 so.

16     I mean, first they take his statement and
17 present it to you as being true, and now they're saying,
18 But don't believe it. Believe that part that hurts him,
19 don't believe the part that helps. There's no
20 indication that there was any plan here, any acting
21 together, nothing whatsoever. When the time came to
22 shoot, this was a sudden reaction to what was going on.
23 If you find he acted in self-defense you can then find
24 him not guilty, and that's not out of the realm of

4-58

1    probability in this case.  You may not like what he

2    did, again, I got to repeat, it's too bad he had a gun,

3    nothing I can do about that.  But it shouldn't lead to

4    any conclusion that therefore he was not acting in self-

5    defense.  Maybe in the world he travelled in that was a

6    part of their necessary daily equipment, like kids today

7    all have their beepers stuck in their belts.  They

8    wouldn't leave the house without one, as if their lives

9    depended on it.

10         So, I think it's a hard job, I wouldn't want

11    it, it's never easy.  A 19-year-old kid looking at you

12    and saying, Look, it's you that I want to decide whether

13    or not I murdered somebody.  I don't -- I'm not even

14    convinced he fired a weapon, anything came out of that

15    pistol, and if it did it certainly didn't endanger

16    anybody.  Was it a stupid act to be shooting at a car in

17    the middle of the day on one of the busy streets of this

18    city?  You bet your life it is, but he's not being

19    charged with being stupid.  He's charged with murder,

20    and the murder is, Let's get the other guy.  He's got to

21    get the other guy, he's not here, I can't defend him.

22    I'm not going to defend the other guy.  I don't know

23    what was in his mind, I don't know what he saw, what he

24    thought, how he came to be there, why he had a gun.  I

4-59

1    can't do that, that's none of my concern.  I got him.

2    But they're going to ask me, Well, take care of that guy

3    too.  They're going to ask you, You find the other guy

4    guilty, and therefore find him guilty too.  That's not

5    fair.  That just isn't right.  Thank you.

6            THE COURT:  Counsel for the Commonwealth,

7    please.

8                        * * * *

4-100

1

2

3

4

5

6

7

8    **Excerpt from trial transcript (vol. IV:  Sept. 29, 1999):  judge's charge**

9    * * * *

10

11

12

13

14

15

16

17

18

19

20

21             In order to prove a conviction of murder, the

22    Commonwealth must prove beyond a reasonable doubt the

23    absence of those mitigating circumstances.  Based on the

24    evidence of this case the mitigating circumstances that

4-101

1    you must consider are:  (1) heat of passion upon

2    reasonable provocation; (2) sudden combat; (3) excessive

3    use of force in self-defense.

4            Let me explain these mitigating circumstances.

5    Heat of passion upon reasonable provocation.  Heat of

6    passion includes the states of mind of passion, anger,

7    fear, fright and nervous excitement.  Reasonable

8    provocation is a provocation of the type which would be

9    likely to produce in a reasonable person such a state of

10   passion, anger, fear, fright and nervous excitement as

11   would overcome his capacity for reflection or restraint,

12   and did actually produce such a state of mind in the

13   defendant.  The provocation must -- must be such that a

14   reasonable person would have become sufficiently

15   provoked and would not have cooled off by the time of

16   the killing, and the defendant was -- the defendant was

17   so provoked and did not cool off at the time of the

18   killing.

19           In addition, there must be a causal connection

20   between the provocation, the state of heat of the

21   passion and the killing.  The killing must follow the

22   provocation before there is a sufficient time for the

23   emotions to -- to cool, and must be the result of the

24   state of mind induced by the provocation rather than a

                           * * * *

**** 

4-103

1   assault by both the deceased and the defendant.  If the

2   Commonwealth has not proven beyond a reasonable doubt

3   the absence of sudden combat, the Commonwealth has not

4   proven malice.

5        Use of excessive force in self-defense.  If

6   the Commonwealth has not proved beyond a reasonable

7   doubt the absence of self-defense, the Commonwealth has

8   not proven malice.

9        In summary there, in order to prove murder,

10  the defendant (*sic*) is required to prove beyond a

11  reasonable doubt that the defendant committed an

12  unlawful killing with malice.  If, after your

13  consideration of all the evidence, you find the

14  defendant (*sic*) has proven beyond a reasonable doubt the

15  elements of murder, except that you find the

16  Commonwealth has not proven beyond a reasonable doubt

17  the absence of heat of passion, sudden combat, or self-

18  defense, you must find the defendant guilty of murder,

19  and you would be -- excuse me -- you must find the

20  defendant not guilty of murder, and you would be

21  justified in finding the defendant guilty of voluntary

22  manslaughter.

23       Now, I'd like to talk a little bit about

24  voluntary manslaughter, folks.  Voluntary --

****

****
                                                    4-105

1        MR. ELIAS:  It's self-defense --

2        THE COURT:  Believe me -- but believe me --

3        MR. ELIAS:  All right.

4        THE COURT:  -- believe me --

5        MR. ELIAS:  Ten minutes is not -- even 20

6    minutes is not a problem, but I can't go much beyond

7    1:30.

8        THE COURT:  Okay.  Well, you just make sure

9    you tell me when you want to go; okay?

10                       END BENCH CONFERENCE

11

12        THE COURT:  Voluntary manslaughter.  Voluntary

13    manslaughter includes the intentional unlawful killing

14    of the deceased by the defendant.  In order to prove
     this crime, the Commonwealth must prove beyond a
     reasonable doubt the following elements:  that the
     defendant intentionally inflicted an injury or injuries
     likely to cause death upon the deceased which caused his
     death, and that the defendant acted unlawfully.  An
     unlawful killing is a killing done without excuse.  I

21    have previously defined that for you.  Not all killings

22    are unlawful.  Killings may be excusable, for example,

23    in the case of self-defense.  If the Commonwealth has

24    proved each of these elements beyond a reasonable doubt

4-106

1    you should return a verdict of voluntary manslaughter.

2    If the Commonwealth fails to prove each -- each one of

3    these elements beyond a reasonable doubt, you may not

4    convict the defendant of voluntary manslaughter.

5          Now, ladies and gentlemen, I'd like to discuss

6    with you the concept of joint venture.  A person may be

7    found guilty of murder in the first degree, murder in

8    the second degree, or voluntary manslaughter even if he

9    did not personally do the act, but, instead, was present

10   at the scene of the crime and aided and abetted its

11   commission as part of a joint venture with another

12   person.

13          You must determine as a question of fact in

14   this case whether or not there was a joint venture in

15   which the defendant was engaged.  In a joint venture a

16   person is guilty if he intentionally participates with

17   another and the commission of a crime is something he

18   wishes to bring about and seeks by his actions to make

19   it succeed.

20          In order to prove the defendant guilty of a

21   crime committed by joint venture the Commonwealth must

22   prove three things beyond a reasonable doubt:  (1) the

23   defendant was present at the scene of the crime; (2)

24   that the defendant aided or assisted in the commission

                        * * * *

* * * *

4-109

1    must establish beyond a reasonable doubt that the

2    defendant knew the other person had a gun with him.

3        Now I'm going to charge you a little bit more

4    on the issue of self-defense, ladies and gentlemen.

5    It's up to you to determine whether this defense under

6    the facts is available to the defendant.  A person is

7    allowed to use reasonable force in self-defense when

8    this is necessary to protect himself from physical harm,

9    and therefore it is not a crime to strike at another

10    person if this is done in a reasonable self-defense.  If

11    there is any evidence of self-defense in this case, the

12    Commonwealth must prove beyond a reasonable doubt that

13    the defendant did not act in self-defense, in other

14    words, if you -- if you have a reasonable doubt whether

15    or not the defendant acted in self-defense your verdict

16    must be not guilty.

17        You must determine first of all, ladies and

18    gentlemen, whether there is any evidence of self-defense

19    in this case, and then go on and make the other

20    determination that the defendant -- the Commonwealth has

21    proved beyond a reasonable doubt that the defendant did

22    not act in self-defense.  The Commonwealth may show the

23    defendant did not act in self-defense by proving beyond

24    a reasonable doubt that any one or more of these three

* * * *

* * * *

4-113

1  have a clear field and be able to escape by walking away

2  or by -- otherwise getting to safety, or by summonsing

3  help if that could be done in time, or by holding the

4  attacker at bay if the means were available, or by some

5  other method. In other cases, such escape routes may

6  not be available. The issue is whether the defendant's

7  use of force seemed to be the only way to protect

8  himself in the circumstances. In considering this you

9  are permitted to take in account that a person who is

10  attacked may have to decide what to do quickly and under

11  emotional strain.

12  A person may not use more force than is

13  reasonably necessary in self-defense. In the eyes of

14  the law a person who uses what is clearly excessive and

15  unreasonable force has himself become an aggressor, and

16  loses the right to self-defense. This is -- this is not

17  -- this is not to pertain, folks, to the charge I gave

18  you that if they -- if the defendant used excessive

19  force it is reduced to a second degree murder, that

20  instruction still remains in effect. How such force is

21  necessary may vary with the situation, of course, and

22  this is not an area where a lot of exactness is

23  possible. You are allowed to take into account that a

24  person must decide quickly and under pressure in

* * * *



COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPT.
CRIMINAL ACTION
NO.: 2001-P-312

COMMONWEALTH OF MASSACHUSETTS

vs.

LAJUAN MELTON

A TRUE COPY ATTEST

*Francis R. Powers*
CLERK

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR NEW TRIAL AND REDUCTION IN VERDICT

The Court allows the defendant to file his amendment to Defendant's Motion for a New Trial and Reduction in Verdict.

The Court erroneously submitted this case to the jury on a lesser included charge of involuntary manslaughter and on self-defense. It was discussed extensively with counsel in the charge conference on September 29, 1999, and the Court "in an exercise of caution" submitted those issues to the jury. This is a case of two men taking their guns out and blasting away at a passing car. There simply is no evidence they were threatened in any way by anyone.

It is noted by the Court that it inadvertently, but erroneously, misspoke when it stated in its final charge at 4-113 of the record that "If the defendant used excessive force, it is reduced to a second degree murder." The correct charge should have been "If the defendant used excessive force, it is reduced to manslaughter." The Court correctly charged the jury on the exact same issue appropriately two other times (e.g. pg. 4-100, l. 14-20; 4-102 to 4-106, l.4). There is absolutely no evidence, admissible or credible, by affidavit or otherwise, that indicates that Edson Miranda was in the subject car at the time of the shooting.

The Court therefore assumes that this Motion to Reduce the Verdict from second degree

murder to manslaughter is being made pursuant to Mass. R. Crim. P. 25(b)(2). See

Commonwealth v. Woodward, 427 Mass. 659, 666-672 (1998). The Court will not deal with

that portion of the motion that requests a new trial as this issue has been dealt with in the Court's

decision on the Motion for a New Trial.

After consideration, and a reading of the entire trial transcript, Motion for a Reduction in

Verdict from Second Degree Murder to Manslaughter is **DENIED**. In light of the facts of this

case, there is no reason to do so.

By the Court,

Thomas E. Connolly
Justice of the Superior Court

Dated: June 6 , 2002

Excerpt from
defendant's initial
Appeals Court brief

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

PLYMOUTH, ss.                        NO. 2001-P-312

COMMONWEALTH OF MASSACHUSETTS

V.

LAJUAN MELTON

_____

Brief and Record Appendix for the
Defendant/Appellant on Appeal from the Plymouth
County Superior Court

_____

June, 2001                    Ruth Greenberg
                              Attorney at Law
                              505 Paradise Rd. #166
                              Swampscott, MA 01907
                              (781) 593-5277
                              B.B.O. #: 563783

\* \* \* \*

II.   THE TRIAL COURT ERRED IN INSTRUCTING THAT
THE USE OF EXCESSIVE FORCE IN SELF-DEFENSE
WAS MURDER, AND THAT THE MITIGATION OF
MURDER TO VOLUNTARY MANSLAUGHTER REQUIRED
PROOF BEYOND A REASONABLE DOUBT OF AN
INTENTIONAL BATTERY LIKELY TO CAUSE DEATH

The trial court's instructions on voluntary
and involuntary manslaughter were garbled.  On
the reduction of murder to murder to voluntary
manslaughter by the mitigation of malice, the
trial court's instructions on excessive force in
self-defense were unconstitutionally infirm for
the reasons set forth below.

The trial court initially instructed, at
Vol. 4, pp. 100-01:

> "Both the crimes of murder and
> voluntary manslaughter require proof of
> an unlawful killing, but the crime of
> murder will be reduced to the crime of
> voluntary manslaughter if the killing
> occurred under mitigating circumstances
> that satisfies you that the defendant
> did not act with malice.  In order to
> prove a conviction of murder, the
> Commonwealth must prove beyond a
> reasonable doubt the absence of those
> mitigating circumstances...  the
> mitigating circumstances you must
> consider are (1) heat of passion; (2)
> sudden combat; and (3) excessive force
> in self defense."

On the critical question of self-defense,
the trial court instructed only, "if the
Commonwealth has not proved beyond a reasonable

13

doubt the absence of self-defense, the Commonwealth has not proven malice," and went on to instruct in the next paragraph (following a peculiarly garbled and burden-shifting instruction on the burden of proof), directly contrary to the original instruction and wrongly, that if:

> "[Y]ou find the Commonwealth has not proven beyond a reasonable doubt the absence of self-defense, you must find the defendant guilty of murder and you would be, excuse me, you must find the defendant not guilty of murder and you would be justified in finding the defendant guilty of manslaughter." (Vol. 4, p. 103).

This is not the law. If the Commonwealth fails to prove the absence of self-defense, the jury is required to return a verdict of acquittal, not manslaughter. <u>Mullaney v. Wilbur</u>, 421 U.S. 684 (1975), <u>Commonwealth v. Rodriguez</u>, 370 Mass. 684 (1976).

This error standing alone, while egregious, could be considered harmless when a jury returns a verdict of second degree murder, since that verdict ordinarily signifies the jury did not in any case agree with the defendant's argument that

he was guilty of the use of excessive force in self-defense.

Here, however, the trial court's error does not stand alone. The trial court additionally instructed that a person who uses excessive force in self-defense loses the right to self-defense entirely, and that a person who uses excessive force in self-defense is guilty of second degree murder, as set forth below:

> "In the eyes of the law, a person who
> uses what is clearly excessive and
> unreasonable force has himself become
> an aggressor and loses the right to
> self-defense. This is, this is not,
> this is not to pertain folks, to the
> charge I gave you that if they, if the
> defendant used excessive force it is
> still reduced to a second degree murder
> that instruction remains in effect... a
> defendant would lose his right to self-
> defense if he used a level of force
> that was unreasonable and clearly
> excessive under the circumstances..."
> (Vol. 4, p 113.).

This is not the law. Excessive force in self-defense is manslaughter, not murder. Commonwealth v. Torres, 420 Mass. 491 (1995). These instructional errors on the issue of the mitigation of murder to voluntary manslaughter are further compounded by subsequent instructions confusing the distinctions between voluntary and

15

involuntary manslaughter, and shifting the burden of proof on manslaughter to the defendant in violation of Article 12 and the Fifth and Fourteenth Amendments.

The trial court initially instructed that voluntary manslaughter involved the mitigation of malice. (Vol. 4, p . 100, 103). Following a break, the trial court then instructed that in order to prove voluntary manslaughter,

> "[T]he Commonwealth must prove beyond a reasonable doubt the following elements: that the defendant intentionally inflicted an injury or injuries likely to cause death upon the deceased which caused his death, an that the defendant acted unlawfully... if the Commonwealth fails to prove each, each one of these elements beyond a reasonable doubt, you may not convict the defendant of voluntary manslaughter." (Vol. 4, p. 105-6).

This instruction, as given, did not describe a separate and lesser-included crime of involuntary manslaughter, but instead acted as a modifier to the court's already erroneous instruction on mitigation. As a result of this odd instruction, before the jury could mitigate murder to voluntary manslaughter, they were required to find beyond a reasonable doubt that

16

the defendant intentionally inflicted an injury likely to cause death. Such a requirement effectively and improperly made murder a lesser included of manslaughter, because shooting at a car full of people satisfies the Commonwealth's burden on third prong malice without proof beyond a reasonable doubt that the defendant intentionally inflicted an injury. Unless the defendant could show he intended to injure the victim, no manslaughter conviction could be returned. Regrettably, no objection was made. Reversal is required nonetheless.

A "defendant is entitled to have the issues of fact clearly presented to the jury and the law applicable thereto carefully explained." Commonwealth v. Pickles, 393 Mass. 775, 779 (1985). "The prejudice caused a defendant by error does not somehow evaporate or diminish simply because his counsel has failed to object." Commonwealth v. Wood, 380 Mass. 545, 551, n. 5 (1980). "Where the error is so fundamental as not to submit to the jury the essential ingredients...on which the conviction could rest, we think it necessary to take note of it on our

17

own." <u>Screws v. United States</u>, 325, U.S. 91, 107
(1995). <u>See</u> also <u>Commonwealth v. Kelleher</u>, 395
Mass. 821, 828 (1985) (Liacos, J., concurring)
defects in charge which pertain to elements of
crime are <u>per</u> <u>se</u> extremely prejudicial and should
require a new trial.

The trial court made these critical
mistakes: That the absence of self-defense was
manslaughter, that excessive force in self-
defense was murder, and that the Commonwealth's
burden of proof on manslaughter was greater than
the burden of proof for murder in the second
degree so that no manslaughter verdict could be
returned absent proof beyond a reasonable doubt
that the victim was shot intentionally. These
instructions were never acknowledged as infirm,
and the final faulty instructions shifted the
burden of proof to the defendant on the issue of
mitigation by requiring him to show he had the
intent to inflict an injury likely to cause death
before a manslaughter verdict rather than a
murder verdict could be returned.

First, the trial court's instruction, never
acknowledged as infirm, that the use of force in

self-defense justifies a verdict of manslaughter, is clearly wrong. After the decision of the United States Supreme Court in <u>Mullaney v. Wilbur</u>, 421 U.S. 684 (1975), the Supreme Judicial Court in <u>Commonwealth v. Rodriguez</u>, 370 Mass. 684 (1976), held that due process requires proof beyond a reasonable doubt that the defendant did not act in self-defense or acquittal, not mitigation, is required. The trial court's instruction thus violates the Fifth and Fourteenth Amendments and Article 12. The fact that elsewhere the trial court instructed that the use of self-defense requires acquittal does not correct the constitutionally infirm instruction because the wrong instruction is never acknowledged as wrong. <u>Commonwealth v. Richards</u>, 384 Mass. 396, 403 (1951). Particular care must be give to curative instructions on the issue of self-defense. <u>Commonwealth v. Ward</u>, 426 Mass. 290, n.5 (1997). Inconsistent self-defense instructions in a self-defense case require a new trial.

Second, the trial court's uncorrected instruction that the use of excessive force in

self-defense compels a verdict of second-degree murder is clearly erroneous. Excessive force in self-defense is manslaughter. <u>Commonwealth v. Torres</u>, 420 Mass. 491 (1995).

This mistake struck at the heart of the defense and even standing alone requires acquittal. The Commonwealth can argue that the defendant was not entitled to a self-defense instruction at all, but once the trial court agreed to instruct on self-defense and on excessive force, the defendant relied on the trial court's ruling and premised his closing argument on mitigation by excessive force. The jury, like the trial judge, might well have been persuaded by trial counsel that this was an excessive force case, and, following the trial court's erroneous instructions, returned a murder verdict. Justice miscarries when a murder verdict is returned on facts constituting manslaughter.

Third, the trial court's instruction that a voluntary manslaughter verdict required proof beyond a reasonable doubt of an additional element; that the defendant intended a battery

likely to cause death, melded and misstated the law of voluntary and involuntary manslaughter, shifting the burden of proof on intent to the defendant before a mitigation verdict could be returned.    It is involuntary, not voluntary manslaughter, that requires proof of an intentional battery <u>Commonwealth v. Sneed</u>, 413 Mass. 387, 394 (1992), <u>Commonwealth v. Catalina</u>, 407 Mass. 779, 784 (1992).    The trial court's anomalous requirement that the mitigation of murder to voluntary manslaughter was disallowed in the absence of proof beyond a reasonable doubt that the defendant intended a deadly battery thus violated the defendant's due process protections under the Fifth and Fourteenth Amendments and Article 12 and reversal is required as well as under <u>Francis v. Franklin</u>, 471 U.S. 307 (1985), <u>Mullaney v. Wilbur</u>, <u>supra</u>, and all their numerous state and federal progeny.

In sum, the trial court found the defendant entitled to an instruction on excessive force in self-defense as mitigating murder to voluntary manslaughter.    Though an appellate court might not agree with that judgment, it cannot be

discounted absent an abuse of discretion. A
reviewing court, after all, does not attend the
view to evaluate the avenue of escape and cannot
judge the credibility of the witnesses who
falsely deny a violent past, and whose unrecorded
dishonest demeanor is trial evidence with as much
weight as a transcript. Furthermore, the
defendant legitimately relied on a mitigation
strategy in crafting his closing and the garbled
mitigation instructions given effectively denied
him the right to a closing argument.

The Commonwealth can argue that even though
the defendant relied on the trial court's promise
of a manslaughter instruction in crafting his
closing argument, a right guaranteed by both the
state and federal constitutions (See Commonwealth
v. Triplett, 398 Mass. 561 (1986), citing Herring
v. New York, 422 U.S. 853 (1996), the defendant's
argument must fail because he made no objection
to the faulty instructions. Commonwealth v.
Woodward, 427 Mass. 659 (1998) and Commonwealth
v. Berry, 47 Mass. App. Ct. 24 (1999) negate that
proposition. A defendant cannot control whether
the lesser included offense of manslaughter is

22

given in a murder case. It follows that he cannot waive it accidentally. Nor can he waive it deliberately; an instruction on manslaughter must be given if any view of the evidence supports it, and a lesser included offense instruction cannot be waived without explicit permission of the defendant himself. Commonwealth v. Garabedian, 399 Mass. 304 (1987), Commonwealth v. Younggebauer, 23 Mass. App. Ct. 46 (1980). No such strategy can be inferred here, when the defendant forcefully and successfully argued a manslaughter instruction should be given.

\* \* \* \*

# Commonwealth of Massachusetts

## Appeals Court for the Commonwealth

### At Boston,

In the case no. 01-P-312

_____ COMMONWEALTH _____

*vs.*

_____ LAJUAN MELTON. _____

Pending in the Superior _____

Court for the County of Plymouth _____

Ordered, that the following entry be made in the docket:

> Judgment affirmed.  Order
> denying motion to expand
> record affirmed.  Order
> denying motion for a
> reduction in verdict
> affirmed.  Order denying
> motion for new trial
> affirmed.  Order denying
> motion for
> reconsideration and
> reconstruction of the
> record affirmed.

By the Court,

_____ ,Clerk

First Assistant

Date November 6, 2003

NOTE:

The original of the within rescript
will issue in due course, pursuant
to M.R.A.P.23

APPEALS COURT

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

01-P-312

COMMONWEALTH

vs.

LAJUAN MELTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

The jury found the defendant guilty of murder in the second degree. He appeals,[1] arguing that the trial court erred in (1) deciding that the defendant's prior convictions could be admitted for impeachment purposes, thus chilling his right to testify; (2) its jury instructions on use of excessive force in self-defense in a homicide case; and (3) determining that statements the defendant made were not custodial, thus obviating the need to provide Miranda warnings. Miranda v. Arizona, 384 U.S. 436 (1966). The issues arising out of the denial of his motion for a new trial[2] are that the trial court erred in (1) concluding that

_____

[1] After filing his initial brief in this appeal, the defendant filed in the trial court a number of postconviction motions, including a motion for new trial. His appeal from the denials of those motions was consolidated with his direct appeal; we allowed the defendant leave to file an additional brief pertaining to these matters.

[2] Although he also purported to appeal from the orders denying "all [motions] ancillary . . . [to his new trial motion] filed and denied since his conviction," which we take to be his motions (1) to expand the record; (2) for a reduction in verdict; and (3) for reconsideration and reconstruction of the record, the defendant does not address these orders in his briefs.

newly discovered evidence was inadmissible; (2) ruling that his prior convictions, which at the time still were on appeal, could be used for impeachment purposes; and (3) not giving the jury an instruction concerning the tone of the judge's voice.  We affirm.

   <u>Prior convictions</u>.  The defendant contends that his right to testify was chilled because the trial court improperly denied his motion in limine to prevent his prior assault by means of a dangerous weapon convictions from being used for impeachment purposes should he testify.  He claims this denial was an "unprecedented abuse of discretion."  (Defendant's brief: 12).  We do not agree.  "[A] defendant's asserted reluctance to testify, because of the likely adverse effect of his impeachment by evidence of his prior conviction, has not commended itself as raising a valid due process challenge."  <u>Commonwealth</u> v. <u>Chase</u>, 372 Mass. 736, 751 (1977).

   Even if the defendant did testify and the convictions were offered against him, there was no abuse of discretion.  The judge carefully considered which convictions he would allow and disallow into evidence for impeachment purposes.  After a hearing, he indicated that the defendant's juvenile adjudications and an adult conviction of malicious destruction of property could be admitted, rulings defense counsel acknowledged he could

---

Accordingly, we deem any argument or error related to these additional orders waived.  Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

"live with" and which are not here at issue. (Tr: 3:12, 198-199). The Commonwealth agreed not to seek admission of two firearm charges, and the judge concluded that, because the remaining four assault by means of a dangerous weapon convictions were not substantially similar to the current charge of murder, they could be admitted for impeachment purposes. (Tr. 3: 203). The judge also indicated that had there been a request to sanitize those charges, he would have done so. (S.R.A. 103). Further, the assistant district attorney indicated that he would forego mentioning that the dangerous weapon at issue in the latter four convictions was a gun. (Tr. 3: 201-202). There was no abuse of discretion.[3]

Jury instruction. Even if there were an error in the self-defense instruction given, it was harmless in light of the fact that no such instruction was warranted.[4] "Because there was no

---

[3] The defendant also alleges that since the prior convictions were on appeal, it was improper to use them. First, the ability to raise the issue when the evidence wasn't used, as the defendant did not testify, is questionable. Even were we to reach the substantive issue, the defendant would fare no better. See Commonwealth v. Digiambattista, 59 Mass. App. Ct. 190, 199 (2003). Lastly, we note that his convictions were ultimately upheld on appeal. Commonwealth v. Melton, 436 Mass. 291 (2002).

[4] The defendant and Donald Averett, having heard a rumor that Claudio and Edson Miranda recently shot at a car on Progresso Street, prepared themselves by each having a gun on their person. (Commonwealth's brief: 12, citing Exhibit 20 at 17). On the day they heard the rumor, while standing outside a residence on Warren Avenue, they observed a car driven by Claudio Miranda pass by them going south. A few minutes later the car passed by them again, this time going north. (Tr. 2: 137-148).

3

right to self-defense, a voluntary manslaughter instruction based on the use of excessive force in self-defense was not appropriate either." Commonwealth v. Roberts, 433 Mass. 45, 57 (2000) (internal quotation and editorial marks, citation omitted). See also Commonwealth v. Curtis, 417 Mass. 619, 632-633 (1994).

Statements to police. The police interviewed the defendant, who was incarcerated on an unrelated offense at the Plymouth County House of Correction, as a potential witness, albeit a reluctant one, to the shooting. While not required, out of an abundance of caution he was provided his Miranda warnings. See Commonwealth v. Bookman, 386 Mass. 657, 660-661 (1982). The police returned to him when his story did not pan out. The motion judge determined that the interviews were conducted in a nonaggressive, informal and nonthreatening manner. The defendant agreed each time to meet with the officers and in fact gave them a number of leads, which turned out to be false. At no time did the defendant refuse to be interviewed or request that the dialogue be terminated. (R.A. 26). The police were surprised

---

There was some discussion between Averett and the defendant about who they believed was in the car. Averett declared that the person hanging out of the window looked like Edson and began firing his gun at the car. (Commonwealth's brief: 13, citing Exhibit 20 at 4-6). The defendant fired two shots at the car as it went around the corner, traveling away from the defendant. (Tr. 3: 27-28; Commonwealth's brief: 30, citing Exhibit 20 at 3-4, 24). The victim, Alex Colon, a passenger in the car, was struck by a bullet. There was no evidence that the victim, or anyone else in the car, was armed at the time of the shooting.

4

when, in giving another statement, the defendant inculpated
himself, at which point the officers stopped the interview and
provided the defendant with his Miranda warnings in both oral and
written form. He subsequently gave a formal taped statement.

That the defendant was in custody on another matter does not
compel the conclusion that he was in custody for Miranda purposes
when questioned about the shooting. Commonwealth v. Larkin, 429
Mass. 426, 432-436 (1999); Commonwealth v. Girouard, 436 Mass.
657, 665 (2002). Moreover, "[v]olunteered statements of any kind
are not barred by the Fifth Amendment." Miranda v. Arizona, 384
U.S. at 478. See Commonwealth v. Caputo, 439 Mass. 153, 160
(2003).

Lastly, "[o]n review of a motion to suppress, we do not
disturb the judge's findings of fact unless they are clearly
erroneous . . . and accord deference to the judge's legal
conclusions, but independently review the correctness of the
judge's application of constitutional principles to the facts
found." Commonwealth v. Sicari, 434 Mass. 732, 746-747 (2001),
cert. denied, 534 U.S. 1142 (2002) (citations, internal quotation
and editorial marks omitted). The trial court's determination
that, in view of the totality of the circumstances, the defendant
made a knowing, intelligent and voluntary waiver of his rights
under Miranda was not error. (R.A. 28). See Commonwealth v.
Medeiros, 395 Mass. 336, 345 (1985).

5

Newly discovered evidence. "Merely introducing another possible suspect, without substantial admissible evidence that this person, and not the defendant, may have committed the crime[], does not warrant a new trial." Commonwealth v. Lopez, 433 Mass. 406, 416 (2001). A defendant, moving for a new trial based on a claim of newly discovered evidence, must show that the evidence was unknown and unavailable at the time of trial, and that it is material and credible. Commonwealth v. Grace, 397 Mass. 303, 305-306 (1986).

Here, the defendant's "new evidence" was neither newly discovered nor credible. He alleges that after trial he learned for the first time that Emmanuel Carapinha, a cellmate of Edson Miranda, claimed, in an immunity proffer by the U.S. Attorney's office (S.R.A. 108, 117), that Edson told him that he (Edson) had accidently shot the victim from the rear seat of the motor vehicle both were in.

This information was not new. In his taped confession, wherein the defendant admitted shooting at the car, he also stated his belief that Edson was in it. Trial counsel established from the medical examiner that the bullet that killed the victim "[c]ould have been fired from somebody in the back seat." (Tr. 3: 105). For these reasons, as well as those provided by the judge in his memorandum of decision (S.R.A. 111-112), we agree that there is no new or substantial admissible

6

evidence that Edson Miranda shot the victim.

   Voice inflections.  The defendant faults the trial judge for
refusing to give an instruction that the tone of his voice during
the charge could not be considered on the issue of guilt or
innocence.  We have listened to the tape of the judge's
instructions and find no evidence of what the defendant
complains.  Additionally, the judge did provide the jury with an
appropriate jury instruction.[5]  The allegation of the defendant
on this point is baseless and frivolous.

   For these reasons, as well as those essentially advanced by
the Commonwealth in its brief at pages eighteen to fifty-three,[6]
those cited by the motion judge in his memorandum of decision on
the defendant's motion to suppress statements (R.A. 18-29), and
those cited by the trial judge in his thorough and thoughtful
memorandum of decision and order on the defendant's motion for

---

   [5] "If I have said or done anything to cause you to believe
that I have any opinion concerning the facts of this case, then
you are mistaken, because I am totally neutral on this issue.  It
is your decision, not mine, to determine whether the Commonwealth
has met its burden of proving the defendant's guilt."  (Tr. 4:
71-72).

   [6] We note, however, that the correct volume cite for
Commonwealth v. Quinones, cited on page 43, is 414, not 14, and
the correct page cite for Commonwealth v. Hallet, cited on page
20, is 552, not 553.

7

new trial (S.R.A. 94-113), the defendant's conviction is
affirmed.

<u>Judgment affirmed</u>.

<u>Order denying motion to expand
record affirmed</u>.

<u>Order denying motion for a
reduction in verdict affirmed</u>.

<u>Order denying motion for new
trial affirmed</u>.

<u>Order denying motion for
reconsideration and
reconstruction of the record
affirmed</u>.

By the Court (Rapoza, Grasso &
Kantrowitz, JJ.),

First Assist.                Clerk

Entered: November 6, 2003

8

# COMMONWEALTH OF MASSACHUSETTS

## SUPREME JUDICIAL COURT FOR THE COMMONWEALTH

O R D E R

It is hereby Ordered, that the following Application for
Further Appellate Review be denied:

FAR-13816

**COMMONWEALTH**
vs.
**LAJUAN MELTON**

Plymouth Superior (Brockton) No. 100934
A.C. No. 2001-P-0312

By the Court,

*Susan Mellen*

Susan Mellen, Clerk

ENTERED:    January 29, 2004

# SUPREME JUDICIAL COURT
## for the Commonwealth
Case Docket

---

### COMMONWEALTH vs. DONOVAN WALKER
SJC-08492

---

| CASE HEADER | | | |
|---|---|---|---|
| **Case Status** | Argued, under advisement | **Status Date** | 11/05/2004 |
| **Nature** | Murder1 appeal | **Entry Date** | 01/23/2001 |
| **Appellant** | Defendant | **Case Type** | Criminal |
| **Brief Status** | | **Brief Due** | |
| **Quorum** | Marshall, C.J., Greaney, Spina, Cowin, Sosman, JJ. | | |
| **Argued Date** | 11/05/2004 | **Decision Date** | |
| **AC/SJ Number** | | **Citation** | |
| **DAR/FAR Number** | | **Lower Ct Number** | |
| **Lower Court** | Essex Superior Court | **Lower Ct Judge** | Christine M. McEvoy, J. |
| **Route to SJC** | Direct Entry: Murder 1 | | |

### ADDITIONAL INFORMATION

Transcripts received: 5 vols, 2 sets. (1 set to court officer. 1 set on 9th floor.) Transcripts dates: 8/14/00, 8/15/00, 8/16/00, 8/17/00 and 8/18/00.

Transcripts received: 1 vol., 1 set. Date: February 8, 2002.

| INVOLVED PARTY | ATTORNEY APPEARANCE |
|---|---|
| **Commonwealth** | Catherine L. Semel, A.D.A. |
| Plaintiff/Appellee | Elin H. Graydon, A.D.A. |
| Red brief filed | |
| 18 Main Br. | |
| 1 Extension, 38 Days | |
| | |
| **Donovan Walker** | Ruth Greenberg, Esquire |
| Defendant/Appellant | |
| Blue brief & appendix filed | |
| 18 Main Br., 18 Reply Br. | |

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 01/23/2001 | #1 | Entered. Notice to counsel. |
| 01/26/2001 | #2 | Appearance of Ruth Greenberg, Esquire for Donovan Walker. |
| 01/26/2001 | #3 | Motion for Funds to Secure Affidavit in Support of Motion for New Trial, filed for Donovan Walker by Ruth Greenberg, Esquire. (1/29/01: See Order of Reference to Single Justice) (3/12/01: REMAND TO THE TRIAL COURT): (By the Court) Notice to counsel. |
| 01/29/2001 | #4 | ORDER OF REFERENCE of Paper #3 (Motion for Funds to Secure Affidavit in Support of Motion for New Trial) to single justice for disposition. (By the Court) |
| 03/13/2001 | #5 | ORDER (By the Court): Defendant's Motion for Funds to Secure Affidavit in Support of Motion for New Trial (Paper #3) is hereby remanded to Essex Superior Court for dispositiuon. Notice to court and counsel. |
| 03/21/2001 | #6 | MOTION for additional 90 days beyond his original 120 days to file a Motion for New Trial, filed for Donovan Walker by Ruth Greenberg, Esquire. (3/22/01: ALLOWED) Notice to counsel. |

| 04/18/2001 #7 | MOTION to extend to additional 90 days filing of Motion for new trial, filed for Donovan Walker by Ruth Greenberg, Esquire. (4/18/01: STAY OF APPELLATE PROCEEDINGS IS GRANTED. STATUS REPORT TO BE FILED 30 DAYS INTERVALS.) Notice to counsel. |
| 05/25/2001 #8 | Status letter from Ruth Greenberg, Esquire: "The defendant will file his new trial motion within (30) days of the expert's completed report." (5/29/01: STATUS NOTED.) Notice to counsel. |
| 06/27/2001 #9 | Status letter from Ruth Greenberg, Esquire: Defendant's materials have been sent to Dr. Speirs, who will review them and plans his initial consultation with the defendant at SBCC for 7/11/01. (6/29/01: STATUS NOTED. FURTHER STATUS REPORT IN 30 DAYS.) Notice to counsel. |
| 07/25/2001 #10 | Status letter from Ruth Greenberg, Esquire: "Defendant's expert to complete his affidavit within next 30 days and the defendant will file motion for new trial within 2 weeks of reciept of the affidavit." (7/26/01: STATUS NOTED. FURTHER STATUS IN 30 DAYS.) Notice to counsel. |
| 08/13/2001 #11 | MOTION FOR NEW TRIAL, filed for Donovan Walker by Ruth Greenberg, Esquire. (See Court Order on 8/13/01.) |
| 08/13/2001 #12 | ORDER: Remanded to Essex Superior Court. |
| 09/12/2001 #13 | Letter from Att. Ruth Greenberg: The Commonwealth is considering the defendant's request to negotiate a disposition of this matter. |
| 10/09/2001 #14 | Status letter from Ruth Greenberg, Esquire: The Commonwealth has agreed to file an opposition to the defendant's motion for new trial by 10/12/01, and the defendant has requested opportunity for oral argument from the trial judge. (10/10/01: NOTED. FURTHER REPORT DUE IN 30 DAYS.) Notice to counsel. |
| 11/02/2001 #15 | Status letter from Ruth Greenberg, Esquire: Judge McEvoy has agreed to schedule an opportunity for oral argument in Suffolk Superior Court the first week of December on the defendant's motion for new trial. |
| 11/04/2001 #16 | Copies of materials filed in Superior Ct. sent by clerk with updated docket sheets. |
| 12/19/2001 #17 | STATUS LETTER from Ruth Greenberg, Esquire: "The Commonwealth wishes to be heard on the defendant's motion for new trail but has been too overtaxed to schedule a hearing." (12/19/01: STATUS NOTED. FURTHER STATUS IN 30 DAYS.) Notice to counsel. |
| 03/22/2002 #18 | STATUS LETTER from Ruth Greenberg, Esquire: Judge McEvoy still has the matter under advisement. (3/22/02: STATUS NOTED. FURTHER STATUS REPORT DUE IN 30 DAYS.) Notice to counsel. |
| 05/08/2002 #19 | STATUS LETTER from Ruth Greenberg, Esquire: The defendant's motion for new trial remains under advisement by Judge McEvoy. |
| 06/03/2002 #20 | STATUS LETTER from Ruth Greenberg, Esquire: The Status of this case remains unchanged. (6/3/02: Noted) |
| 07/29/2002 #21 | STATUS LETTER from Ruth Greenberg, Esquire: The status of this case remains unchanged. (7/29/02: STATUS NOTED. COUNSEL TO ADVISE THIS OFFICE OF STEPS, IF ANY, TAKEN TO ASSIST THE TRIAL COURT IN ITS DETERMINATION OF THE MOTION FOR NEW TRIAL.) Notice to counsel. |
| 08/01/2002 #22 | STATUS LETTER from Ruth Greenberg, Esquire: Response to Court's order to show what steps the defendant has taken to litigate his motion for new trial. *Attached letters to trial court filed. *(8/1/02: STATUS NOTED. FURTHER STATUS REPORT DUE IN 30 DAYS.) Notice sent. |
| 08/23/2002 #23 | STATUS LETTER from Ruth Greenberg, Esquire: The trial court has denied the defendant's motion for new trial and reduction in verdict. The defendant requests a deadline of December 15, 2002, for the filing of his brief, now consolidated with his direct appeal. *Brief due 30 days from the receipt of the notice of assembly of record on the appeal of the denial of motion for new trial. Notice sent. |
| 12/03/2002 #24 | STATUS LETTER from Ruth Greenberg, Esquire: Status remains unchanged. (Noted. Further status report due in 30 days.) Notice to counsel. |
| 12/30/2002 #25 | NOTICE RE POLICY FOR EMERGENCY CANCELLATION OF COURT. |
| 01/06/2003 #26 | STATUS LETTER from Ruth Greenberg, Esquire: The transcript of the hearing on the motion for new trial trial is not yet complete. (1/8/03: Noted. Further status due in 30 days.) |

App. 45        [Melton's proposed exhibit, part 5 of 5]

|  |  |  |
|---|---|---|
|  |  | Notice to counsel. |
| 03/18/2003 | #27 | STATUS LETTER from Ruth Greenberg, Esquire: Transcripts not yet complete. (Noted. Further status report due in 30 days.) Notice to counsel. |
| 05/07/2003 | #28 | STATUS LETTER from Ruth Greenberg, Esquire: Status remains unchanged. (Status noted. Further status due in 30 days.) Notice to counsel. |
| 07/09/2003 | #29 | STATUS LETTER from Ruth Greenberg, Esquire: "Status quo. It generally takes fourteen months to produce a transcript for an indigent defendant in Essex County." (Status noted. Further status in 30 days.) Notice to counsel. |
| 08/27/2003 | #30 | STATUS LETTER from Ruth Greenberg, Esquire: "Status quo. Thank you." (Noted. Further status report due in 30 days.) Notice to counsel. |
| 10/01/2003 | #31 | STATUS LETTER from Ruth Greenberg, Esquire: No change. *Status Noted. Further Status due in 30 Days. Notice sent. |
| 11/13/2003 | #32 | STATUS LETTER from Ruth Greenberg, Esquire: Counsel has not received a transcript of the hearing on the defendant's new trial motion. (Status noted) Notice to counsel. |
| 01/22/2004 | #33 | Atty Greenberg states she will file the brief by the end of February even though the MNT transcript has not yet been filed. |
| 01/22/2004 | #34 | STATUS LETTER from Ruth Greenberg, Esquire: ...pursuing the transcript. *Noted. |
| 01/30/2004 | #35 | STATUS LETTER from Ruth Greenberg, Esquire: Counsel is still waiting for transcripts. (Noted. Further status report due in 30 days.) Notice sent. |
| 03/02/2004 | #36 | STATUS LETTER from Ruth Greenberg, Esquire: Defendant to file his brief... *NOTED. Further status report due in 30 days. Unless the brief has been filed. Notice sent. |
| 03/10/2004 | #37 | SERVICE of brief w/appendix for Defendant/Appellant Donovan Walker by Ruth Greenberg, Esquire. |
| 04/13/2004 | #38 | (Fax copy) Motion to continue stay of proceedings on appeal pending receipt of motion for new trial hearing transcripts, filed for Commonwealth by Catherine Langevin Semel, A.D.A.. |
| 05/17/2004 | #39 | MOTION to extend to 7/16/04 filing of brief of Commonwealth by Catherine L. Semel, A.D.A.. |
| 05/20/2004 |  | ALLOWANCE of Paper #39 to 07/16/2004 for filing of brief of Plaintiff/Appellee Commonwealth. No further enlargements anticipated. Notice to counsel. |
| 06/29/2004 | #40 | NOTICE of September argument sent. |
| 07/28/2004 | #41 | MOTION to extend to July 28, 2004, filing of brief of Commonwealth by Catherine L. Semel, A.D.A. *ALLOWED. |
| 07/28/2004 | #42 | SERVICE of brief w/supplemental appendix for Plaintiff/Appellee Commonwealth by Catherine Semel, A.D.A. |
| 08/04/2004 | #43 | SERVICE of appellant's reply brief for Donovan Walker by Ruth Greenberg, Esquire. |
| 08/12/2004 | #44 | NOTICE of October argument sent. |
| 09/14/2004 | #45 | NOTICE of November argument sent. |
| 10/06/2004 | #46 | ORDERED for argument on November 5. Notice sent. |
| 11/05/2004 |  | Oral argument held. (CJM G S C SN). |

As of 12/10/2004 01:02

Excerpt from defendant's brief in
*Commonwealth v. Donovan Walker*

\* \* \* \*

V.    THE ERRORS ASSERTED, TAKEN TOGETHER, REQUIRE
REVERSAL

Even where unpreserved errors standing alone do not require reversal, the cumulative effect of a combination of errors can create a substantial likelihood of a miscarrage of justice. Commonwealth v. Cancel, 344 Mass. 567, 575 (1985).

Taking the evidence in the light most favorable to the defendant, as this court must when considering erroneous instructions on mitigation, the trial record reflects a defendant who was smaller and skinnier than his adversary. The adversary was drunk, coked up, and abusive. The adversary chased the defendant out of the bar. The adversary struck the first blow. The defendant begged to be allowed to retreat. Any threats alleged were contingent and made in an attempt to stop the violence. There was testimony from a witness at Vol. 2, p. 160 that Mr. Davis's friends stood between the defendant and his car and barred the way. There was testimony from another witness at Vol. 3, pp. 4-23, that people stood in a circle around Walker and Davis, blocking retreat. There was testimony from a third witness at Vol. 3, p. 125-126, that

35

a group of twenty encircled Walker and Davis, effectively blocking retreat. And there was testimony that Mr. Walker begged to leave, saying, "I just want to get to my car, I don't want this . . . just let me get to my car." Vol. 3, p. 125, 141, seriatim.

This evidence supported the trial court's decision to instruct on manslaughter. Her subsequent finding there was no evidence to support the claim once the error of the instruction was noted, though perhaps not patently tailored to nullify constitutional objection, is not supported by the record. And even if were, state and federal due process require that once a trial court agrees to give a manslaughter instruction, the instruction must be given correctly, because the defendant relies on the agreed-upon instruction in crafting his closing argument. An incorrect and burden-shifting instructing unconstititionally diminishes closing argument. Appellate refusal to examine a claim of defective instruction because of the appellate court's belief that the challenged instruction was not required in the

first instance fails to recognize that closing
argument is based on the law the trial court
promises to give, and appellate refusal to
consider the claim deprives the defendant of
closing argument entirely nunc pro tunc. Article
14 and the Fifth and Fourteenth Amendments forbid
this Court's disallowance of a defendant's
defense after the fact, and any case law to the
contrary requires reexamination in light of
Herring v. New York, 422 U.S. 853 (1996), as
cited in Commonwealth v. Triplett, 398 Mass. 561
(1986),recognizing that the right to argument
based on the facts and law is constitutionally
guaranteed.   A defendant of course cannot
predicate a defense on an instruction the court
refuses to give.  Conversely, closing argument
is properly predicated on any instruction to
which the court agrees.

The defendant asserts that requiring the
jury to agree on a theory of manslaughter before
returning a manslaughter verdict shifted the
burden of proof and denied him the benefit of the
lesser included manslaughter instruction
requested by both his counsel and the

Commonwealth.   Furthermore, the absence of a
correct instruction on when the right to self-
defense attached additionally precluded a
unanimous finding of excessive force in self-
defense, a mitigation theory inherent in the
defendant's argument.   Burden-shifting
instructions on inference and credibility and
Acevedo error compounded the problem.   Due
process was violated when the jury was left with
Woodward's choice, murder or acquittal, if the
jury all agreed that malice was not proved, but
were not in agreement why.   When all the trial
court's errors pertaining to a manslaughter
verdict are considered together, it is clear that
a new trial  is in the interest of justice.   A
court's inadequate instruction on legal
principles governing the operation of a defense
violates the right to present a defense just as
if relevant evidence has been excluded.
Commonwealth v. Grey, 399 Mass. 369, 471 n. 3
(1981).   And see Carter v. Kentucky, 450 U.S.
288, 303 (1981): juries are not experts in legal
principles; to function effectively and justly
they must be accurately instructed on the law.

****

38

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPREME JUDICIAL COURT
NO. FAR-13816

APPEALS COURT
NO. 2001-P-0312

COMMONWEALTH

v.

LAJUAN MELTON

CERTIFICATE OF SERVICE

I, the undersigned, counsel for the defendant in Commonwealth v. Lajuan Melton, No. FAR-13816, hereby certify that I today caused to be served the defendant's pleadings, listed below, on the Commonwealth, by mailing a copy, first-class mail (or faster), postage prepaid, to the assistant district attorney named below:

Pleadings:

Motion for leave to file late petition for reconsideration of denial of application for further appellate review, with my supporting affidavit;

petition for reconsideration, with a supporting memorandum of law.

Assistant District Attorney:

Gail M. McKenna, Esq., ADA
Office of the District Attorney
32 Belmont St.
Brockton, MA 02410-5243


_____
ANNE E. GOWEN, BBO # 630486


Dated:    December 17, 2004.