# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LAJUAN MELTON,<br>    *Petitioner,*<br><br>v.<br><br>LOIS RUSSO, et al.,<br>    *Respondents* | CIVIL ACTION<br>NO. 1:05-CV-10905-GAO |

## PETITIONER'S OPPOSITION TO MOTION TO DISMISS

## TABLE OF CONTENTS

I.   MR. MELTON EXHAUSTED GROUND ONE IN THE STATE COURTS. ............................................................................................... 2
   A.   Introduction ............................................................................ 2
   B.   The requirements of exhaustion ........................................... 3
   C.   Mr. Melton exhausted the *Herring* argument in the SJC. ............. 4
   D.   Mr. Melton exhausted the *Herring* argument in the Appeals Court. ................................................................................. 10
II.  WHETHER GROUND TWO WAS EXHAUSTED HAS BECOME MOOT. ............................................................................................... 13
**CONCLUSION** ................................................................................................ 14
**EXHIBIT** ........................................................................................................ 15
**CERTIFICATES** ............................................................................................ 18

Respondents have moved the Court to dismiss Mr. Melton's habeas petition on the ground that he failed to exhaust its two grounds in the Massachusetts state courts.  The Court should deny respondents' motion.  Mr. Melton adequately exhausted Ground 1 by raising it (1) in his petition to the Supreme Judicial Court (SJC) for reconsideration of its denial of his further-appellate-review application (ALOFAR), and (2), in the Appeals Court.  Whether Mr. Melton adequately exhausted Ground 2 is moot, because this Court recently allowed Mr. Melton to withdraw that ground.

## I. MR. MELTON EXHAUSTED GROUND ONE IN THE STATE COURTS.

### A. Introduction

By way of background, Ground 1 of the habeas petition argues that the Massachusetts trial court violated the Sixth Amendment by undermining defense counsel's closing argument.  In *Herring v. New York*,[1] the United States Supreme Court made clear that the Sixth Amendment's guarantee of effective assistance of counsel includes the right to make closing argument.  Here, the trial judge promised before closing argument to instruct on the theories of defense; accordingly,

---

[1] 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).

counsel's argument relied on those theories. In his instructions to the jury, however, the judge made serious errors in explaining the defenses. The errors so significantly mischaracterized the defenses that jurors would have wondered why counsel had thought they had any application to the facts of his client's case. The effect of the instructions was to unduly limit counsel's ability to make an effective closing argument in violation of the Sixth Amendment as explicated in *Herring*.

### B.   The requirements of exhaustion

Last year, this Court reiterated the basic principles of exhaustion:

> The exhaustion of remedies prerequisite ... requires that a habeas petitioner has given state courts an " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before seeking relief from a federal court. .... "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." ....
>
> To show that he has fairly presented his federal claim to the state courts, a "petitioner must show that 'he tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question.' " .... "In determining whether a petitioner presented his or her federal claims to the state's highest court 'face-up and squarely,' ..., [a court must] consider issues of probability -- whether it is more likely than not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims

were presented." ....[2]

### C. Mr. Melton exhausted the *Herring* argument in the SJC.

Mr. Melton's petition for reconsideration of the denial of his ALOFAR gave the SJC its most obvious "opportunity to pass upon and correct"[3] the *Herring* violation.[4]

The procedural background for the reconsideration petition was as follows. On January 29, 2004, the SJC denied Mr. Melton's ALOFAR.[5] Later that year, undersigned counsel realized that *Commonwealth v. Donovan Walker,* a case newly before the SJC, raised a *Herring* claim identical to Mr. Melton's.[6] Accordingly, on December 20, 2004, Mr. Melton filed a petition for reconsideration of the denial of ALOFAR.[7] The petition explained the *Herring* argument in detail.[8] On

---

[2] *Clements v. Maloney*, 359 F.Supp.2d 2, 8 (2005) (O'Toole, J.) (citations omitted; brackets in *Clements*).

[3] *Clements,* 359 F.Supp.2d at 8 (citations and internal quotation marks omitted).

[4] The petition itself and the legal memorandum filed in its support are exhibits in this case. See electronic order entered January 20, 2006, allowing Mr. Melton's motion (Document 22) for leave to file an additional exhibit. The petition and memorandum are available as attachments to Document 22 on the ECF system and in paper format in the Clerk's Office.

[5] Docket entries in SJC No. FAR-13816 (attached hereto as an exhibit), Paper No. 3.0.

[6] *Commonwealth v. Donovan Walker,* SJC No. SJC-08492.

[7] Docket entries in SJC No. FAR-13816, Paper No. 5.0 ("Petition to reconsider denial of FAR application filed by LaJuan Melton. (Referred to the justices.)").

[8] Docket entries in SJC No. FAR-13816, Paper No. 5.

January 6, 2005, the SJC affirmed the *Walker* defendant's conviction,[9] and on February 2, 2005, the SJC denied Mr. Melton's petition for reconsideration.[10]

The reconsideration petition and the memorandum of law filed in its support could not have articulated the *Herring* argument more plainly. The petition asked the SJC to reconsider the denial of the ALOFAR, in light of the fact that *Walker* raised an argument identical to Mr. Melton's, namely:

> that by erroneously instructing on the theory of defense, the trial court violated the defendant's right, guaranteed by the Sixth Amendment to the United States Constitution, to closing argument by counsel. See *Herring v. New York*, 422 U.S. 853, 856-863, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).[11]

Mr. Melton's memorandum of law explicated the argument in more detail. First, Mr. Melton explained that the Sixth Amendment, as explicated in *Herring*, prohibited the denial of, and undue restriction upon, closing argument:

> .... The Appeals Court's analysis [in its unpublished opinion affirming Mr. Melton's conviction] misses the point. As Mr. Melton had argued in his Appeals Court brief ... , once the judge had agreed to instruct on the theories, counsel relied upon them in closing argument. The judge's serious errors in defining the theories nullified central points of counsel's argument, implicitly instructing jurors

---

[9] *Commonwealth v. Donovan Walker*, 443 Mass. 213 (Jan. 6, 2005).
[10] Docket entries in SJC No. FAR-13816, Paper No. 6 ("DENIAL of petition to reconsider denial of FAR application").
[11] Petition for Reconsideration of Denial of Application for Further Appellate Review (ALOFAR) at 1 (available in this Court as an attachment to Document 22).

that Mr. Melton's claimed defense was illegitimate.

In *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (discussed in defendant's Appeals Court brief, below, at App.31) (followed in *Commonwealth v. Triplett*, 398 Mass. 561, 568-569 (1986) (discussed in Mr. Melton's Appeals Court brief, below, at App.31); *Commonwealth v. Cutty,* 47 Mass. App. Ct. 671, 674-675 (1999); *Commonwealth v. Miranda,* 22 Mass. App. Ct. 10, 12 [(]1986)), the U.S. Supreme Court confirmed that a defendant's Sixth Amendment right (made applicable to the States by the Fourteenth Amendment) to the effective assistance of counsel included the right to have counsel make a closing argument:

> The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment. [Footnote 4, here, cited *Herring*, 422 U.S. at 862.]

Thus, a New York statute giving a judge at a bench trial the discretion to prohibit closing argument violated the Sixth Amendment. [Footnote 5, here, cited *Herring*, 422 U.S. at 865.]

This and other courts interpreting *Herring* have recognized that not only the total denial, but also the undue restriction on or incompetent handling of closing argument can ... violate a defendant's Sixth Amendment right. See, e.g., *Triplett*, 398 Mass. at 568-569 (counsel's ineffective arguments in closing "eroded any theory of voluntary manslaughter" and "left the client denuded of a defense" (internal quotation marks omitted); citing *Herring* for the right to make closing argument); *United States v. Miguel,* 338 F.3d 995, 997, 999, 1002 (9th Cir. 2003) (judge's decision, after argument began, to preclude counsel from arguing

theory of defense and to instruct jury that defense theory was unsupported by evidence, was structural error); *United States v. Grabiec,* 96 F.3d 549, 551-552 (1st Cir. 1996) (although judge's restriction on argument not "plain error" under *Herring*, court did not challenge appellant's premise: that in an appropriate circumstance, restriction could violate *Herring*).[12]

The memorandum went on to explain what had taken place in Mr. Melton's case.[13] The judge had promised to instruct on the defendant's theories (self-defense and the use of excessive force in self-defense) and the significance of each theory for a verdict (self-defense would require acquittal; the use of excessive force would reduce a murder verdict to voluntary manslaughter). The actual instructions, however, mischaracterized those theories. The judge erroneously instructed, in part, that:

- self-defense would reduce a murder verdict to voluntary manslaughter (rather than requiring an acquittal);

- the Commonwealth's failure to disprove the use of excessive force in self-defense would reduce a verdict from first- to second-degree murder (rather than to voluntary manslaughter); and

- the jury could not convict Mr. Melton of the lesser-included offense of voluntary manslaughter unless it found that he or the alleged co-venturer had "intentionally inflicted an injury or injuries likely to cause death upon the deceased which caused his death" (not, in fact, an element of voluntary manslaughter).

---

[12] Memorandum of Law in Support of Petition for Reconsideration of Denial of ALOFAR at 5-7 (available in this Court as an attachment to Document 22).

[13] Memorandum of Law in Support of Petition for Reconsideration of Denial of ALOFAR at 7-9.

These errors informed the jury that counsel's understanding of the theories of defense -- as articulated in his closing argument -- were incorrect.  In fact, based on the judge's instructions, neither of the two defense theories could possibly lead to an acquittal or reduction in verdict.  Stated differently, the errors had the effect of transforming counsel's closing argument into an ineffective one:

> ... [L]ike counsel's argument in *Triplett*, supra, [the incorrect instructions] implicitly "eroded [Mr. Melton's] theory" of defense, in violation of his Sixth and Fourteenth Amendment rights to have counsel make closing argument on his behalf.[14]

The SJC accepted Mr. Melton's reconsideration petition for filing.  The petition clearly spelled out the *Herring* argument and clearly articulated its federal "constitutional dimensions."[15]  It is a certainty -- let alone "more likely than not"[16] -- that the "reasonable jurists"[17] of the SJC understood the argument and its federal basis.  The petition adequately exhausted Ground One.

It is true that cases in this Circuit describe the ALOFAR as the

---

[14] Memorandum of Law in Support of Petition for Reconsideration of Denial of ALOFAR at 9 (citation omitted).

[15] *Clements,* 359 F.Supp.2d at 8 (citation and internal quotation marks omitted).

[16] *Id.*

[17] *Id.*

"decisive pleading" for exhaustion purposes.[18]  This rule of law, however, is uniformly recited in response to petitioners who contend that the SJC, in interpreting the ALOFAR, should have looked beyond that document to pleadings filed in a different court (generally, to the petitioner's Appeals Court briefs).  If the federal claim appears in those documents, such petitioners argue, the federal court may assume that the SJC considered it.  "[O]rdinarily," the United States Supreme Court has held, this argument must fail.[19]

The situation here is different.  The SJC gave Mr. Melton permission to file a petition for reconsideration *in the SJC.* (Indeed, though somewhat, unusual, such a pleading is far from unheard of. See, e.g., *Commonwealth v. Wotan,* 419 Mass. 1110 (Mar. 28, 1995) (granting FAR, upon reconsideration of earlier denial (at 419 Mass. 1106 (Jan. 24, 1995))); *Commonwealth v. Gagnon*, 419 Mass. 1106 (Jan. 24, 1995) (same (earlier denial of FAR at 419 Mass. 1103 (Jan. 4, 1995))).)  In order to identify Mr. Melton's claim, therefore, the SJC was not required to turn to documents filed elsewhere.  The petition here constituted a "fair[] present[ation]"[20] of the *Herring* claim.

---

[18] *Id.*, quoting *Adelson v. DiPaola*, 131 F.3d 259, 263 (1st Cir. 1997), quoting *Mele v. Fitchburg Dist. Ct.*, 850 F.2d 817, 823 (1st Cir.1988).

[19] *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

[20] *Clements,* 359 F.Supp.2d at 8 (citations and internal quotation marks omitted).

### D.   Mr. Melton exhausted the *Herring* argument in the Appeals Court.

Respondents argue, in a footnote, that Mr. Melton failed to explain Ground 1 with sufficient detail in the Appeals Court.[21] Respondents make two contentions: first, that the Appeals Court may have deemed Mr. Melton's "passing reference" to the leading United States Supreme Court case -- *Herring* -- insufficient to rise to the level of appellate argument under Mass. R. App. P. 12(b)(4). This is akin to a claim of procedural default: i.e., a claim that the Appeals Court may have declined to consider the *Herring* issue because Mr. Melton's Appeals Court brief did not fulfill the formal requirements for "raising" it. As an analogue of a procedural-default argument, Respondents' contention must fail: procedural default would permit dismissal of the habeas petition only if the Appeals Court's rejection of Mr. Melton's claim "clearly and expressly"[22] relied upon procedural default, which it did not. (The Appeals Court failed even to mention the federal claim, or any state-law analogue thereof, let alone give a reason for rejecting it.)

Second, Respondents contend that in the Appeals Court, Mr. Melton "did not explain the significance of [*Herring*] or how it supported

---

[21] Memorandum of the Respondents in Support of Motion to Dismiss (Document 19) at 13 n.3.
[22] *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985), quoting *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

his argument now made on habeas corpus review that his Sixth Amendment rights had been abridge[d]."

Mr. Melton's exposition of the *Herring* argument in his first brief[23] to the Appeals Court could indeed have been clearer. The brief sufficed, however, to meet the requirements of exhaustion: it articulated the basic claim (that improper deviations from the promised jury instructions undermined closing argument) and identified its federal basis (the Sixth Amendment).

Mr. Melton's Appeals Court brief set out the *Herring* argument in the following words (emphasis added here):

> The Commonwealth can argue that the defendant was not entitled to a self-defense instruction at all, *but once the trial court agreed to instruct on self-defense and on excessive force, the defendant relied on the trial court's ruling and premised his closing argument on mitigation by excessive force.* ....[24]
>
> ....
>
> .... Further, the defendant legitimately relied on a mitigation strategy in crafting his closing and *the garbled mitigation instructions given effectively denied him the right of a closing argument.*
>
> The Commonwealth can argue that even though the defendant relied on the trial court's promise of a manslaughter instruction in *crafting his closing argument, a right guaranteed by both the state and federal constitutions (See* Commonwealth v. Triplett, *398 Mass. 561 (1986), citing* Herring v New York, *422 U.S. 853 (1996) [sic]),* the defendant's argument must fail because he made no objection to the faulty instructions. *Commonwealth v. Woodward,*

---

[23] Mr. Melton filed an initial and a supplemental brief; the *Herring* argument appeared only in the former.

[24] Mr. Melton's initial Appeals Court brief (filed in this Court as Respondents' Exhibit 1).

427 Mass. 659 (1998) and *Commonwealth v. Berry,* 47 Mass. App. Ct. 24 (1999) negate that proposition. ....[25]

This presentation was sufficiently clear, "in all likelihood," to "alert [the] reasonable jurist[s of the Appeals Court] to the existence of the federal question:"[26] the brief "cited a specific constitutional provision" (the Sixth Amendment), "relied on federal constitutional precedent" (*Herring*), and "claimed a determinate right that is constitutionally protected" (the right to make closing argument).[27]

Respondents may be claiming not so much that Mr. Melton failed to articulate the *federal* basis of his argument as that he failed to articulate the argument at all. For example, Respondents would have had Petitioner go into greater detail, explaining the significance of *Herring* to his constitutional claim. Further elaboration was unnecessary to communicate Mr. Melton's basic point. Mr. Melton argued that the instructions undermined closing argument in violation of the Sixth Amendment; he cited *Herring* not for some obscure holding therein, but for its thesis: denial of closing argument violates the Sixth Amendment. Reasonable jurists would have made the connection.

Finally, even if the brief was unreasonably sketchy, Mr. Melton

---

[25] Petitioner's initial Appeals Court brief at 22.
[26] *Nadworny v. Fair,* 872 F.2d 1093, 1101 (1st Cir. 1989).
[27] These are three of the four guidelines this Court may use to determine whether a petitioner has adequately demarcated his claim, in state court, as "federal." *Nadworny,* 872 F.2d at 1097.

explicitly contended, at oral argument, that the change in instructions undermined closing argument, thereby dispelling any ambiguity in the brief.[28]

## II. WHETHER GROUND TWO WAS EXHAUSTED HAS BECOME MOOT.

Mr. Melton's habeas petition originally raised two grounds, and Respondents argue that he exhausted neither. Recently -- after Respondents filed their motion to dismiss -- this Court allowed Mr. Melton's motion to withdraw Ground 2.[29] Because Ground 2 is no longer in the case, this Court need no longer decide whether Mr. Melton adequately exhausted it. Accord *Clements v. Maloney* at 4, in which this Court held that voluntary dismissal of the petitioner's unexhausted claims would avoid dismissal of the entire habeas petition under the rule of *Rose v. Lundy*.[30]

---

[28] On February 16, 2006, undersigned counsel wrote to the Appeals Court requesting a copy of the audio recording of the argument. On March 8, 2006, having received no response, counsel called the Court and learned from an employee that the recording had been destroyed because of the length of time (two and one-half years) since oral argument. Counsel then called the Plymouth County District Attorney's office to ask whether the assistant district attorney who represented the Commonwealth in the Appeals Court and SJC had a copy of the recording, but that attorney was out of the office until next week (the week beginning March 20, 2006). Counsel will inform this Court if she obtains a copy of the argument.
   In support of the description of oral argument tendered above, counsel is today filing a motion for leave to file her affidavit concerning the argument.
[29] See electronic order filed February 3, 2006.
[30] 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

## **CONCLUSION**

For the foregoing reasons, Mr. Melton respectfully asks the Court not to dismiss his habeas petition.

>Respectfully submitted,
>
>LAJUAN MELTON,
>
>By his attorney,
>
>_____/s/Anne E. Gowen_____
>Anne E. Gowen
>Mass. BBO #630486
>64 Princeton-Hightstown Rd., # 127
>Princeton Junction, NJ 08550
>tel. 609.919.0381
>fax 202.478.5203
>aegowen@comcast.net

Dated: March 10, 2006.

## **EXHIBIT**

SJC No. FAR-13816
    Docket entries ...................................................................Exhibit 1

```
01/19/06                    COMMONWEALTH OF MASSACHUSETTS                    Page 1
                              SUPREME JUDICIAL COURT
                              FOR THE COMMONWEALTH

                                     FAR-13816

                           COMMONWEALTH vs. LAJUAN MELTON
```

```
ENTRY DATE 12/01/03        CASE STATUS FAR denied; recon denied
STATUS DATE 02/02/05            NATURE Murder2
AC DOCKET NO 2001-P-0312   AC ENT/RESC 11/06/03        CLERK TL
   APPELLANT D                 APPLICANT D             CV/CR CR
   LEAD CASE                    RELATION               OPPOSE 12/11/03
FC DOCKET NO                   CITATION 441  Mass. 1102
  TRIAL JUDGE Connolly T.      TRIAL CT Plymouth Superior (Brockton)
TC ENTRY DATE 05/22/98      TC DOCKET NO 100934        PUBLIC y
```

Commonwealth  
Plaintiff/Appellee  
Active 03/01/01

Gail M. McKenna, A.D.A.  
Office of the District Attorney/Plymou  
32 Belmont Street  
P.O. Box 1665  
Brockton MA 02303-1665  
Phone: 508-584-8120 2804  
Fax: 508-586-3578  
557173 Active 10/26/01 Notify

LaJuan Melton  
Defendant/Appellant  
Active 03/01/01

Anne E. Gowen, Esquire  
64 Princeton-Hightstown Rd.,#127  
Princeton Junctn NJ 08550  
Phone: 609-919-0381  
Fax: 202-478-5203  
630486 Active 07/03/03 Notify

Plymouth Superior Court  
(Lower Court: criminal)  
Clerk for Criminal Business  
32 Belmont Street  
Brockton MA 02401  
Phone: 508-583-8250  
Active 03/01/01

\*\*\*   D O C K E T   \*\*\*

---

PAPER DATE      ENTRY
------ --------  -----

       12/01/03  Docket opened.

1.0    12/01/03  FAR APPLICATION of LaJuan Melton, filed by Anne E. Gowen, Esquire.

2.0    12/29/03  Action on application deferred. (1/5/04: Briefs/Appendix/Transcript requested from Atty. Gowen.)(Telecon 1/7/04: Atty. Gowen will send.) (1/12/04 - Material received: Defendant's Brief and Appendix, Suppl. Brief and Appendix; Commonwealth's Brief; 7 vols. of transcript (some with missing pages). NOTE: No need to return these items to counsel as they are copies.

```
01/19/06                COMMONWEALTH OF MASSACHUSETTS                    Page 2
                          SUPREME JUDICIAL COURT
                          FOR THE COMMONWEALTH

                                FAR-13816

                      COMMONWEALTH vs. LAJUAN MELTON


                            * * *  D O C K E T  * * *
--------------------------------------------------------------------------------
PAPER  DATE      ENTRY
------ --------  --------------------------------------------------------------
  3.0  01/29/04  DENIAL of FAR application.

  4.0  12/20/04  MOTION to file a petition for reconsideration on denial of FAR
                 application late, filed for LaJuan Melton by Anne E. Gowen,
                 Esquire. (Referred to the justices) Notice sent.

  5.0  12/20/04  Petition to reconsider denial of FAR application filed by
                 LaJuan Melton. (Referred to the justices)

  6.0  02/02/05  DENIAL of petition to reconsider denial of FAR application.

  7.0  02/10/05  Request to update docket filed by Anne E. Gowen, Esquire. *No
                 action to be taken.
```

A true copy.

Attest:

1-19-06 _____
Date          Asst Clerk

# CERTIFICATES

### CERTIFICATE OF CONSULTATION

Pursuant to LAR 7.1(a)(2), I certify that I corresponded today by email with Respondents' counsel, Assistant Attorney General Annette C. Benedetto, to determine whether we could narrow the issue in dispute. AAG Benedetto responded that she would review her file and consider my request, but that (understandably) she would not have time to make a decision before the end of today, when Mr. Melton's response was due. I will keep the Court informed of any agreements.

| /s/Anne E. Gowen | March 10, 2006 |
|---|---|
| Anne E. Gowen | Date |

### CERTIFICATE OF SERVICE

I certify, pursuant to LAR 5.2(b), that I am today serving a true copy of the above document upon Assistant Attorney General Annette C. Benedetto, the attorney of record for Respondents and a registered ECF user, by electronically filing the document on the ECF system.

| /s/Anne E. Gowen | March 10, 2006 |
|---|---|
| Anne E. Gowen | Date |