UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| LAJUAN MELTON,<br>*Petitioner*<br><br>v.<br><br>LOIS RUSSO, et al.,<br>*Respondents* | CIVIL ACTION<br>NO. 1:05-CV-10905-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER'S APPLICATION FOR
CERTIFICATE OF APPEALABILITY**

On October 10, 2007, this Court dismissed Mr. Melton's habeas petition (under 28 U.S.C. § 2254) for failure to exhaust his federal claim in the Massachusetts courts. Mr. Melton now applies for a certificate of appealability (COA) on whether the Court's exhaustion ruling was correct. A COA should be granted, because

1. "jurists of reason would find it debatable whether [this Court] was correct in its ... ruling"[1] on the exhaustion issue, and

2. Mr. Melton's underlying "constitutional claim does not," at a minimum, "appear utterly without merit

---

[1] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (where petition was resolved on procedural grounds, first of two requirements for issuance of COA is that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling"). See also *Mateo v. United States*, 310 F.3d 39, 40 (1st Cir. 2002) (adopting both *Slack* requirements).

after a 'quick look ....'"[2]

## I. Procedural history

A Massachusetts jury convicted Mr. Melton of second-degree murder. In the Massachusetts Appeals Court (where his direct appeal had been consolidated with his appeal from the denial of a new-trial motion), Mr. Melton challenged several aspects of the trial court's homicide instructions. As part of that challenge, he contended (with insufficient clarity, this Court held) that the instructions had so confused the relationship among the concepts of murder, manslaughter, self-defense, and the use of excessive force in self-defense as to have rendered counsel's closing argument ineffective in violation of the Sixth Amendment.

After losing in the Appeals Court,[3] Mr. Melton filed his application for further appellate review (ALOFAR) in the Supreme Judicial Court (SJC).[4] His original ALOFAR did not re-state the Sixth Amendment claim, but rather took issue with one aspect of the Appeals Court's analysis of his broader jury-instruction argument.

After the SJC denied the ALOFAR, Mr. Melton learned that another defendant's case raising the same Sixth Amendment concern as his was then pending before the SJC.[5] He therefore applied for reconsideration of the denial of ALOFAR;[6] this time, he spelled out the Sixth Amendment argument. The SJC permitted the reconsideration application to be filed and – after it had ruled in the other Sixth Amendment case -- denied it.[7]

---

[2] *Mateo,* 310 F.3d at 41 (interpreting second prong of *Slack* standard).
[3] *Commonwealth v. Melton,* 59 Mass. App. Ct. 1111 (2003), unpub. op. at 2003 WL 22517387.
[4] *Commonwealth v. Melton,* SJC No. FAR-13816.
[5] The case was *Commonwealth v. Donovan Walker,* 443 Mass. 213 (2005) (argued Nov. 5, 2004; decided Jan. 6, 2005).
[6] See *Melton,* SJC No. FAR-13816, P. 5 (Dec. 20, 2004) ("Petition to reconsider denial of FAR application filed by LaJuan Melton. (Referred to the justices[.])").
[7] *Id.,* P. 6 (Feb. 2, 2005) ("DENIAL of petition to reconsider denial of FAR application").

This Court held that Mr. Melton had failed to exhaust the Sixth Amendment claim.[8] Presentation of the claim in Mr. Melton's Appeals Court brief was so cursory and unclear that a reasonable jurist would not likely have been alerted to its existence.[9] Furthermore, even if his Appeals Court presentation had been sufficient, Mr. Melton's presentation in the SJC was not. Raising the claim in a petition to reconsider the denial of ALOFAR, rather than in the ALOFAR itself, did not exhaust the claim.

## II. Reasonable jurists could disagree about whether Mr. Melton exhausted his claim.

### A. *A reasonable jurist could believe that the reconsideration application fairly presented the federal claim to the SJC.*

This Court held that by placing his federal claim in the reconsideration application rather than in the ALOFAR, Mr. Melton denied the SJC the requisite opportunity to review the federal claim. This conclusion is debatable. Mr. Melton contends that in fact, for exhaustion purposes, a reconsideration application has the same status as an ALOFAR: assuming that the federal claim was properly raised in the intermediate court,[10] raising it in a reconsideration application (just like raising it in an ALOFAR) exhausts it.

This Court disagreed, following the reasoning of *Castille v. Peoples*.[11] There, the petitioner had tried to exhaust his federal claim by raising it -- apparently for the first time ever – in a petition for allocatur with the Pennsylvania supreme court. Because "[r]eview by grant of an allocatur petition was not a matter of right ... but rather of sound judicial

---

[8] See this Court's Opinion and Order of Oct. 10, 2007.
[9] See *Clements v. Maloney,* 485 F.3d 158, 162 (1st Cir. 2007) (exhaustion requires that petitioner "present the federal claim fairly and recognizably to the state courts, meaning that he must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question" (internal quotation marks omitted)).
[10] See discussion at Subsection II.B, below.
[11] *Castille v. Peoples,* 489 U.S. 346, 351-352 (1989).

discretion," raising the federal claim for the first and only time in that pleading did not count as "fair presentation" for exhaustion purposes.[12]

This Court reasoned that a reconsideration application, like a Pennsylvania allocatur petition, is addressed to the state court's discretion; therefore, under *Castille,* "presenting an argument ... to the SJC for the first time [in such a pleading] is insufficient to constitute fair presentment ...."[13]

*Castille* requires no such conclusion. By this Court's logic, the ALOFAR – another pleading addressed to the SJC's discretion — would *also* be insufficient to exhaust a federal argument, were it the vehicle used to present that argument to the SJC for the first time. But this is not the case: to the contrary, under well-established law, the ALOFAR is precisely the pleading in which a litigant is expected to have raised his federal claim in order to exhaust it.

What *Castille* means to say is that "presenting an argument ... *to the state court system* for the first time" in a request for discretionary review is insufficient to exhaust. That is, under *Castille,* even an ALOFAR would be insufficient, were it to raise a federal claim that had never before seen the light of day. What *Castille* does not do is distinguish between the ALOFAR and other requests for discretionary relief (e.g., reconsideration applications). Under *Castille,* the questions to be asked of Mr. Melton's reconsideration application are the same as those that would apply to an ALOFAR: do the four corners of the pleading fairly present the federal argument, and was that argument previously raised in the intermediate appellate court?

The answer to both questions is "yes." The reconsideration application plainly sets out the federal argument, and Mr. Melton contends (in Subsection B, below) that he raised that argument adequately in the Appeals Court. Thus, the reconsideration application – just like an ALOFAR – was sufficient to present the federal argument fairly to the SJC.

Mr. Melton notes that this analysis – which endows reconsideration applications and ALOFARs with the same power to

---

[12] Opinion and Order at 6 (internal quotation marks omitted).
[13] Opinion and Order at 7.

exhaust -- is consistent with the principle of comity that underlies the exhaustion requirement. Accord *Gonsalves v. Thompson,* 396 F.Supp.2d 36, 40 (D.Mass. 2005) (ALOFAR not "exclusive" or "necessary" means of presenting claim to SJC for exhaustion purposes: petition under Mass. Gen. Laws ch. 211, § 3, also gives SJC "fair opportunity" to correct alleged error). That is, it would show no disrespect for the state court system for this federal court to rule that a reconsideration application gives the SJC as meaningful an opportunity as an ALOFAR to adjudicate a federal claim. An application to reconsider the denial of ALOFAR is a pleading with which the SJC has been familiar since 1995 (at the latest);[14] in the years that followed, the SJC could presumably have prohibited such applications by court rule, had it wished to do so. Further, the SJC has historically acted on reconsideration applications,[15] giving rise to an expectation among litigants that it is a legitimate pleading. Mr. Melton is not, in other words, asking this Court to consider his clam exhausted because he raised it in a token pleading outside the scope of normal appellate procedure.

Assuming that Mr. Melton properly presented his federal claim in the Appeals Court (see Subsection II.B, below), its placement in the reconsideration application constitutes fair presentation to the SJC.

> B. *A reasonable jurist could believe that Mr. Melton's brief and oral argument fairly presented the federal claim to the Appeals Court*

A reasonable jurist could believe that Mr. Melton fairly presented his Sixth Amendment claim to the Appeals Court, based on his brief, on his oral argument, or on a combination of the two.

### 1. The written argument

Mr. Melton's brief set forth the Sixth Amendment argument as follows (particularly pertinent passages are rendered in **bold**):

---

[14] See, e.g., *Commonwealth v. Wotan,* 419 Mass. 1110 (1995) (granting ALOFAR upon reconsideration of earlier denial (at 419 Mass. 1106 (1995)); *Commonwealth v. Gagnon,* 419 Mass. 1106 (1995) (same; earlier denial at 419 Mass. 1103 (1995)).

[15] See *id.*

.... Furthermore, the defendant legitimately relied on a mitigation strategy in crafting his closing and **the garbled mitigation instructions given effectively denied him the right to a closing argument.**

The Commonwealth can argue that even though **the defendant relied on the trial court's promise of a manslaughter instruction in crafting his closing argument, a right guaranteed by both the state and federal constitutions ([s]ee *Commonwealth v. Triplett,* 398 Mass. 561 (1986), citing *Herring v. New York,* 422 U.S. 853 (1996)[)],** the defendant's argument must fail because he made no objection to the faulty instructions. *Commonwealth v. Woodward,* 427 Mass. 659 (1998) and *Commonwealth v. Berry,* 47 Mass. App. Ct. 24 (1999) negate that proposition.  A defendant cannot control whether the lesser included offense of manslaughter is given in a murder case.  It follows that he cannot waive it accidentally. Nor can he waive it deliberately; an instruction on manslaughter must be given if any view of the evidence supports it, and a lesser included offense instruction cannot be waived without explicit permission of the defendant himself. *Commonwealth v. Garabedian,* 399 Mass. 304 (1987), *Commonwealth v. Younggebauer,* 23 Mass. App. Ct. 46 (1980).  No such strategy can be inferred here, when the defendant forcefully and successfully argued that a manslaughter instruction should be given.[16]

---

[16] Mr. Melton's initial Appeals Court brief at 22-23.

This sufficed "' ... to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'"[17] According to the First Circuit, a petitioner can accomplish this in any of four ways: by –

> (1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution.[18]

Mr. Melton chose methods (2) and (3):

> (2): He claimed that the erroneous instructions "effectively denied him the right to a closing argument" and asserted that that right was "guaranteed by ... the ... federal constitution[ ]...." That is, he explicitly contended that the trial court had violated a federal right.

> (3): In support of his assertion that the right to closing argument was "guaranteed by the state and federal constitutions," he cited a state case (*Triplett,* 398 Mass. 561) and noted that it cited a federal precedent: *Herring v. New York,* 422 U.S. 853.

This Court's dissatisfaction with Mr. Melton's presentation of the federal claim lay not so much in a failure to cite a federal case or state a federal rule of law, but rather in a failure to explicate the argument "straightforward[ly]."[19] The Court noted, for example, that the argument

---

[17] *Clements v. Maloney,* 485 F.3d at 162.
[18] *Clements,* 485 F.3d at 162.
[19] Opinion and Order at 3.

was only a couple of sentences long and was part of a broader argument about why the judge's instructions were erroneous.[20]

In retrospect, petitioner certainly wishes that the brief had made the federal claim more central and described it more clearly. Neither the brevity of the argument, however, nor its inclusion within a broader challenge to the homicide instructions renders it insufficient to exhaust. As the First Circuit stated in *Nadworny,*

> "the exhaustion requirement is to be applied with a view to substance rather than form: the claim need not be argued in detail nor separately presented, but its federal quality ... must be readily apparent."[21]

Mr. Melton met that requirement, here.

The District Court also noted that Mr. Melton's brief contained no "direct invocation" of the Sixth Amendment or the right to effective assistance of counsel (on which the federal right to closing argument is based) and that the citations to *Herring* and *Triplett* would not have made clear, to a reasonable jurist, what exactly Mr. Melton was arguing.[22]

The Court underestimates the capabilities of a reasonable jurist. Faced with a citation to *Herring* – the main holding of which is that a defendant has a Sixth-Amendment-based right to closing argument – and a claim that Mr. Melton was "effectively denied ... the right to a closing argument," a reasonable jurist would have understood Mr. Melton's point. The fact that *Herring* dealt with a wholesale, explicit denial of the right, whereas Mr. Melton's case alleges a less severe deprivation, is of no import: most legal arguments proceed by analogy from one case (usually a seminal one in which the result seems obvious in retrospect) to another (usually the litigant's, in which the result is debatable).

---

[20] Opinion and Order at 2, 3.
[21] *Nadworny v. Fair,* 872 F.2d 1093, 1101 (1st Cir. 1989).
[22] Opinion and Order at 3-4.

Finally, the Court cites several cases in which state-court briefs failed to fairly present a federal claim.[23] In each case, the presentation was far less straightforward than in Mr. Melton's. In *Martens*[24] (rejecting "needles scattered in a haystack" as insufficient to exhaust), the petitioner's inadequate state-court brief made *no* legal argument, cursory or otherwise, but rather merely referred to facts that could in theory have given rise to a federal claim. In *Adelson*[25] (rejecting "constitutional buzzwords" as insufficient), the defendant's state-court brief "cited no federal cases, made no mention of the Fourteenth Amendment, and eschewed all references to the concept of due process." In *Gagne*[26] and *Dougan*,[27] the state-court briefs referred to the general denial of a right to a "fair trial" without identifying any specific, federally protected aspect of that right.

By contrast with all of these cases, Mr. Melton made a legal argument, however brief; relied on federal cases, however concisely; and identified a specific, federally protected way in which his trial was unfair. This was, at a minimum, probably[28] sufficient to have alerted the justices of the Appeals Court to the existence of the Sixth Amendment argument.

2.   The oral argument

Furthermore, were it not clear that Mr. Melton's brief was alleging a violation of the Sixth Amendment right to closing argument, undersigned counsel's affidavit (filed in the instant habeas proceedings) stated that during oral argument in the state Appeals Court, counsel

---

[23] Opinion and Order at 4-5.
[24] *Martens v. Shannon,* 836 F.2d 715, 717 (1988).
[25] *Adelson v. DiPaola,* 131 F.3d 259, 263 (1997)
[26] *Gagne v. Fair,* 835 F.2d 6, 8 (1st Cir. 1987).
[27] *Dougan v. Ponte,* 727 F.2d 199, 201-202 (1st Cir. 1984).
[28] See *Nadworny,* 872 F.2d at 1098 ("The appropriate focus, therefore, centers on the *likelihood* that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours. The inquiry, in our view, is foremost a question of *probability*" (emphasis added)).

> ... briefly explained to the justices why Mr. Melton contended that the trial judge's instructional errors mattered: it was because defense counsel had relied on the promised instructions in his closing argument. [29]

This would seem to resolve the District Court's concern that the Appeals Court justices would not have understood the content of the federal claim.

The District Court's opinion does not mention counsel's affidavit. Possibly, this is because the judge found it unbelievable and implicitly declined to rely on it. Ordinarily, a district court's credibility determinations will be set aside on appeal only if clearly erroneous.[30] In this case, however, Mr. Melton respectfully submits that they are subject to challenge because the manner in which the Court made its determination was arbitrary and capricious. The affidavit was uncontested, despite respondents' counsel's ample means of investigating its claims. (Counsel could, for example, have checked with Assistant District Attorney Gail McKenna, who represented the government at oral argument in the Appeals Court and might also have retained her notes.) Further, the Court gave no indication, at the hearing on the motion to dismiss, that it had concerns about the affidavit's credibility. Had concerns been expressed, undersigned counsel could have sought to corroborate the affidavit, by, for example, interviewing others who had been present for the oral argument to determine whether they had taken and retained their notes.

Alternatively, the District Court may have implicitly ruled that oral argument was not a permissible means of exhausting a claim. Undersigned counsel is aware of no rule of law excluding oral argument from consideration; indeed, if the exhaustion requirement "is to be

---

[29] See docket in this case, Document # 26 (MOTION for Leave to File Affidavit of Counsel by LaJuan Melton. (Attachments: # 1 ... AFFIDAVIT OF COUNSEL CONCERNING ORAL ARGUMENT IN THE APPEALS COURT)(Gowen, Anne) (Entered: 03/10/2006)); Electronic Clerk's Notes on hearing of Sept. 25, 2006 ("... Plaintiff's Motion for Leave to File (26) is GRANTED ...").

[30] Fed. R. Civ. P. 52(a)(6) (as revised through December 1, 2007).

applied with a view to substance rather than form,"[31] oral argument must be considered. Accordingly, published opinions mentioning oral argument in the course of evaluating exhaustion have assumed its relevance.[32] At a minimum, reasonable jurists could debate whether the District Court correctly discounted the affidavit here.

### III. At a minimum, Mr. Melton's "constitutional claim does not appear utterly without merit after a 'quick look.'"

In order to obtain a COA where, as here, a district court dismissed a petition on procedural grounds, a petitioner must also show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."[33] The First Circuit has followed the Seventh in holding that this standard is met where "petitioner's constitutional claim does not appear utterly without merit after a 'quick look ....'"[34]

Mr. Melton's Sixth Amendment claim more than meets this standard. *Herring* recognized a right to closing argument as an aspect of the right to the effective assistance of counsel. Mr. Melton's trial counsel claimed in closing that Mr. Melton had acted in self-defense, or that, at a minimum, his conduct was mitigated by his use of excessive force in self-defense.[35] Shortly thereafter, the judge's instructions

---

[31] *Nadworny,* 872 F.2d at 1101.

[32] See, e.g., *LaFrance v. Bohlinger,* 365 F.Supp. 198, 201 (D.Mass. 1973) ("With respect to exhaustion, we conclude that the issues now raised were before the Supreme Judicial Court, *partially during oral argument* and fully at pages twenty through twenty-seven of Defendant's Brief" (emphasis added)). See also *U.S. ex rel. DeNegris v. Menser,* 360 F.2d 199, 202 (2d Cir. 1966) (noting that claim was exhausted, where presented to state supreme court in brief and during oral argument); *Jones v. Vacco,* 944 F.Supp. 229, 232 (S.D.N.Y. 1996) (claim was exhausted in intermediate appellate court, where, during oral argument, petitioner "amplified" more limited claim he had made in his written brief).

[33] *Slack,* 529 U.S. at 484.

[34] *Mateo,* 310 F.3d at 41.

[35] This is shorthand for the more accurate formulation: the Commonwealth's failure to prove the absence of reasonable force in self-defense would require acquittal; and the Commonwealth's failure to prove the absence of self-defense, but its successful proof of the use of

contradicted the legal assumptions on which that argument depended: they stated, in part, that self-defense would not require an acquittal, and that the use of excessive force in self-defense would mitigate murder-one to murder-two, rather than to voluntary manslaughter. Counsel's closing argument was thus transformed into the unpersuasive plea of an attorney unfamiliar with the law; it was no longer the effective assistance that the Sixth Amendment guarantees.

## CONCLUSION

Reasonable jurists could debate whether Mr. Melton's Appeals Court brief and his application to the SJC for reconsideration of the denial of his ALOFAR fairly presented his Sixth Amendment claim to the Massachusetts courts. Furthermore, that claim is, at a minimum, not "utterly without merit." Mr. Melton respectfully requests issuance of a COA.

Respectfully submitted,

LAJUAN MELTON,

by his attorney,

　　　　/s/ Anne E. Gowen　　　　
Anne E. Gowen
Mass. BBO #630486
64 Princeton-Hightstown Rd., # 127
Princeton Junction, NJ 08550
tel. 609.919.0381
fax 202.478.5203
aegowen@comcast.net

Dated:　　January 2, 2008.

---

excessive force in self-defense, requires mitigation of murder to voluntary manslaughter.

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on January 2, 2008.

/s/ Anne E. Gowen