```
 1              UNITED STATES DISTRICT COURT FOR
                 THE DISTRICT OF MASSACHUSETTS
 2

 3 LaJUAN MELTON,                    )
                                     )
 4                  Petitioner,      )
                                     )
 5                                   )      Civil Action
   vs.                               )      No. 05-10905-GAO
 6                                   )
                                     )
 7 LOIS RUSSO,                       )
                                     )
 8                  Respondent.      )

 9


10          TRANSCRIPT OF HEARING ON MOTION TO DISMISS

11

12      BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                UNITED STATES DISTRICT JUDGE
13


14              United States District Court
15            John J. Moakley U.S. Courthouse
                   1 Courthouse Way
16            Boston, Massachusetts  02210
                   September 25, 2006
17                     2:30 p.m.

18


19                   *  *  *  *  *
20


21


22          SHELLY M. KILLIAN, RPR, CM, CRR
                 Official Court Reporter
23          John J. Moakley U.S. Courthouse
             1 Courthouse Way, Room 3510
24               Boston, MA  02210
                   (617) 737-7117
25
```

```
 1  APPEARANCES:

 2  For the Petitioner:

 3       Anne E. Gowen, Attorney at Law
         64 Princeton-Hightstown Road
 4       Princeton Junction, New Jersey  08550

 5  For the Respondent:

 6       Annette C. Benedetto, Attorney at Law
         Department of the Attorney General
 7       One Ashburton Place
         Boston, Massachusetts  02208

 8
    Also Present:  LaJuan Melton, Petitioner
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (The following proceedings were held in open
 3      court before the Honorable George A. O'Toole, Jr.,
 4      United States District Judge, United States District
 5      Court, District of Massachusetts, at the John J. Moakley
 6      United States Courthouse, 1 Courthouse Way, Boston,
 7      Massachusetts, on September 25, 2006.)
 8              THE CLERK:  Next up will be Melton versus
 9      Russo.
10              For a motion hearing the case of Melton versus
11      Russo, which is docket 05-10905.  Would counsel please
12      identify yourselves for the record.
13              MS. BENEDETTO:  Annette Benedetto for the
14      Respondent, who is Lois Russo, the Superintendent of
15      Souza-Baranowski.
16              MS. GOWEN:  And I'm Anne Gowen for the
17      Petitioner, Mr. Melton, who is here with me.
18              THE COURT:  All right.  We have the
19      Respondent's motion to dismiss.
20              MS. BENEDETTO:  Yes.  Thank you, your Honor.
21              The petitioner filed two grounds for relief in
22      the habeas corpus petition.  The second ground was
23      withdrawn, so I would just direct my comments to ground
24      one.
25              Ground one says by instructing incorrectly on
```

PDF created with pdfFactory trial version www.pdffactory.com

1    self-defense and murder, excessive force and the

2    definition of voluntary manslaughter, the trial court

3    undermined defense counsel's argument so significantly

4    as to have violated defendant's Sixth Amendment right to

5    present closing arguments.  The respondent filed a

6    motion to dismiss on exhaustion grounds.  And it's our

7    position that this issue was not properly and fairly

8    presented to the Supreme Judicial Court.  Papers were

9    submitted to the Court and I have the ALOFAR before me

10    and I think it's clear that the ground in the ALOFAR

11    exclusively looks at the trial judge's instructions

12    regarding Massachusetts law and does not touch on this

13    Sixth Amendment right to present closing arguments.

14            Now, I direct your attention, your Honor, to

15    my memo, which it cites several cases, including the

16    Baldwin v. Reese case and the Mele v. Fitchburg District

17    Court case.  And both these cases, as the Court is aware

18    I know, say that the -- the habeas court looks at the

19    four corners of these documents, of the ALOFAR,

20    exclusively to determine whether a federal

21    constitutional issue has been exhausted.  After I filed

22    my motion, Miss Gowen filed a motion for

23    reconsideration.

24            The ALOFAR was denied -- the FAR petition was

25    denied sometime in January, and then that following

```
 1    December Miss Gowen filed a motion for counsel for --

 2    I'm not quite sure, I think it's a different counsel

 3    actually.  Counsel for the petitioner filed a motion for

 4    reconsideration.  And I will tell the Court that I

 5    didn't -- I did not file the motion for reconsideration

 6    with the Court, which I would have done had I known it

 7    existed.  But Miss Gowen did file a motion for

 8    reconsideration.  I think her argument is that this

 9    motion for reconsideration, which does talk about this

10    issue, is sufficient for exhaustion purposes.

11         So I just wanted to clarify to the Court that

12    the list of exhibits that I filed does not include the

13    motion for reconsideration.  It only includes the

14    ALOFAR.  Of course, it's my position that the ALOFAR is

15    the document that this Court should look at.  The motion

16    for reconsideration, especially coming ten months after

17    the ALOFAR was denied, is not a proper means to get an

18    issue before the court.  That's one ground that we filed

19    the motion to dismiss.

20         Another one is these are totally different

21    claims.  One, the claim before this Court, ground one is

22    a Sixth Amendment right to present closing argument

23    claim.  The claim that was in the ALOFAR, even though it

24    doesn't invoke any constitutional amendment, it's a

25    state law claim, number one, is our position.  And,
```

PDF created with pdfFactory trial version www.pdffactory.com

```
1    number two, even if you wanted to add a federal

2    constitutional veneer to it, which I can't see myself,

3    it would be a Fifth Amendment due process claim.  So

4    we're getting these issues sound in very different

5    amendments.

6              So even if the Court looks at the ALOFAR, it

7    must be mindful of the fact that the ALOFAR -- the

8    ALOFAR depends on state law.  There's no due process

9    claim, there's no Fifth Amendment claim in it, and

10   there's no right to counsel claim in it as well.

11             When coming to the motion for reconsideration,

12   truly that's the first time this claim was presented to

13   the SJC, and that was ten months after they looked at

14   the FAR application.

15             THE COURT:  Can you give me a date of when

16   that --

17             MS. BENEDETTO:  January -- the ALOFAR was

18   denied in January of 2005, and that following December

19   the application -- the motion for reconsideration was

20   filed.  And it was denied the following February.  I

21   checked the Statute of Limitations, your Honor.

22             THE COURT:  So is that '05/'06?

23             MS. BENEDETTO:  Yes, right.  I did check the

24   Statute of Limitations.  And because there is no -- by a

25   day or two the statute was met because we have a January
```

PDF created with pdfFactory trial version www.pdffactory.com

```
1    ALOFAR, FAR denial, and a motion for reconsideration ten

2    months later.  That's why -- it's not before us but in

3    case the Court was interested, there was no Statute of

4    Limitations problem because of that delay.

5              But anyway, our argument is that ground one is

6    unexhausted.  It was not couched in federal

7    constitutional grounds in the ALOFAR.  There is no

8    suggestion of a Sixth Amendment right.  There is no

9    suggestion of a Fifth Amendment due process claim in

10   it.  It's purely on state law grounds.  And that the

11   motion for reconsideration, which occurred many months

12   later, does not answer these questions, it's not fair

13   presentation to the SJC.

14             THE COURT:  Well, the purposes of the rule

15   of -- what we call the rule of Baldwin v. Reese, the

16   four corner proposition as it is a matter of federal

17   exhaustion principles as opposed to state procedure, is

18   what are the four corners of the -- that is to say, it

19   appears here there was, in addition to the application

20   itself, a record appendix submitted, which may be

21   customary, which reproduces some of the proceedings in

22   the appeals court for example.  Is that considered part

23   of the application for purposes of involving the Reese

24   rule or not?

25             MS. BENEDETTO:  I would say that the ALOFAR
```

PDF created with pdfFactory trial version    www.pdffactory.com

```
 1    itself is the four corners.  The motion for
 2    reconsideration, even though it was denied, wasn't the
 3    SJC looking at this issue.  And I have no case where
 4    this is really prudent, but I'm just suggesting that
 5    under the rules of the SJC, you put all your grounds in
 6    your petition for ALOFAR.  And I don't even think
 7    there's a rule for a motion for reconsideration.
 8              THE COURT:  I'm not talking about the
 9    reconsideration.  I'm talking about the original
10    application.  In other words, if an argument were to be
11    made before the Appeals Court excluded from the body of
12    the application for further review, but the Appeals
13    Court brief was also supplied accompanying the initial
14    ALOFAR, would that satisfy presentation of the claim?
15              MS. BENEDETTO:  I would say no, your Honor.
16    In this case the Appeals Court I don't think is helpful
17    at all.  The Appeals Court brief itself.  Because even
18    that brief, which I have here, talks about state law and
19    doesn't get into any Sixth Amendment right to counsel.
20    It says here in the Appeals Court brief:  "The trial
21    court erred in instructing the use of excessive force in
22    self-defense was murder, and that the mitigation of
23    murder to voluntary manslaughter required proof beyond a
24    reasonable doubt of intentional battery likely to cause
25    death."  So it's focused mainly on the state law
```

1    questions, and no Sixth Amendment right that's come up

2    in the habeas petition is here.  So I guess that would

3    be one answer.

4              And the other one would be what is the four

5    corners?  Well, the case is the Mele case talked about

6    what the SJC looks at, you know, when they have a

7    petition before it.  And it talks about that they don't

8    call for the record until and unless it's granted.  So I

9    guess conceivably, you know, if it's presented to the

10   court, the SJC as an addendum, which it by the way

11   usually is, it's part of the four corners; but they

12   still have to isolate and identify the grounds that

13   they're raising.  The Appeals Court, many of these

14   Appeals Court decisions will take up 10 or 15 or 8 or

15   many, many issues, whereas the ALOFAR and the FAR

16   application will only identify, many times, the

17   strongest issues.

18             So it's really the ALOFAR itself that has to

19   be looked at and not any attachment to it.  That's

20   basically, I think, what that Mele case is.  If you

21   don't raise it in your ALOFAR, the SJC, I mean clearly

22   and up front, that the SJC can assume that one is

23   pleased with the rest of the decision.  So I would say

24   the ALOFAR is the key element, your Honor.  I think

25   that's what Mele says.

PDF created with pdfFactory trial version www.pdffactory.com

1          So if there are no other considerations, your

2     Honor, I just would rest on the record and on my brief.

3          THE COURT:  All right, thank you.

4          Miss Gowen.

5          MS. GOWEN:  Thank, your Honor.  As you can

6     imagine, we have several different responses to that.

7          First, I would urge your Honor to consider our

8     petition for reconsideration of the denial of the

9     ALOFAR.  It was indeed filed ten months later.  And,

10    true, there is no rule in the SJC governing whether a

11    petition for reconsideration can be filed; however, when

12    I filed it, I specifically filed a motion for leave to

13    file it, thereby leaving the SJC the opportunity to say

14    denied, this is not cognizable under our rules, it's ten

15    months later, forget about it.  Instead they didn't.

16    They filed it.  It was deemed in the docket filed and

17    they denied it.  So it seems to me that they considered

18    the federal issue, which was therein presented, as much

19    as the SJC can ever be said to consider an issue in an

20    application for further appellate review.  We have no

21    reason to think that they didn't.

22         THE COURT:  No, you do have a reason to think

23    they didn't, but you don't know whether they did or

24    didn't.  That is to say, the reason they might not have

25    was that it was procedurally defaulted in some way, that

PDF created with pdfFactory trial version www.pdffactory.com

1   perhaps they took the view that there is no proper

2   opportunity to -- or should be no regular opportunity to

3   move to reconsider.  There are multiple theories about

4   what they do.  The problem is we don't have a statement

5   from the SJC as to the reason why the motion was

6   denied.  But there are procedural reasons, as well as

7   merits reasons, that they could have come to the word

8   "denied."

9           MS. GOWEN:  I would imagine, though, that if

10  it had been this is too late, this is defaulted, they

11  would have denied my motion to file it.  That's why I

12  specifically filed a motion to file it, to make sure

13  that, you know -- I wanted to see if they would accept

14  it procedurally before they got on to the issue of

15  allowing further appellate review.  It's possible that

16  they decided to allow me to file it and then decided

17  that it was -- it seems more likely they would have just

18  denied it from the very beginning and said, No, you

19  can't file this, Miss Gowen, it's too late.  But, you're

20  right, they could have allowed it and decided it was too

21  late.  I'm not really sure.

22          So we would argue it was just fine for them --

23  we would argue that we exhausted it in the petition to

24  reconsider the denial of ALOFAR and that that is just

25  fine for this Court to consider.  I know that the cases

PDF created with pdfFactory trial version www.pdffactory.com

1   do say the ALOFAR is the decisive pleading for

2   exhaustion purposes but exceptions have been made.  I

3   think it was in November of last year there was a

4   District Court decision from Judge Lindsay talking about

5   how the petitioner regrettably neglected to raise the

6   federal issue in either of his two ALOFARs, but

7   fortunately he did raise it in his 211-3 petition.  And

8   Judge Lindsay said that was enough, the SJC had an

9   opportunity to look at the federal claim.  Admittedly a

10  211-3 petition is more conventional than a petition to

11  reconsider the denial of ALOFAR but --

12          THE COURT:  At least there's a provision that

13  authorizes it.

14          MS. GOWEN:  Again, your Honor, the SJC was

15  free to tell me, you know, take your petition and, I'm

16  sorry, you can't file it, motion to file denied.

17  Frankly, I was a little surprised that they didn't do

18  that but they didn't.

19          I also think it's notable if we're trying to

20  sort of intuit what the SJC was doing, and I'm not sure

21  if you're interested in doing that, that the reason the

22  petition was filed in December -- well, there were

23  several reasons, one of which I'm sure you can guess.

24  But one of the reasons is the SJC was at that time

25  considering a Sixth Amendment claim very similar to

PDF created with pdfFactory trial version www.pdffactory.com

1    Mr. Melton's.  So I thought, well, I better ask them to

2    look at Mr. Melton's claim again, you know.  It was the

3    case of <u>Commonwealth v. Donovan Walker</u>.  In my opinion,

4    the SJC did not reject our petition until after they

5    denied -- after they affirmed the conviction in <u>Walker</u>,

6    which, you know, if you're trying to intuit what they

7    are doing suggests perhaps they considered the Sixth

8    Amendment issue in <u>Walker</u>, they denied it and then they

9    said, well, we better reject Mr. Melton's application.

10   Gives us some reason to think that they thought about

11   the merits.

12           Moving on, though, I would suggest that in

13   this case, even the original ALOFAR was acceptable.  And

14   I will certainly admit that it wasn't as clear as it

15   could have been.  This case is somewhat unusual in that

16   when we filed the original ALOFAR, the SJC clerk's

17   office called me, as the docket reflects, and said

18   please send up all the Appeals Court briefs and all the

19   transcripts.  That's something that's never happened to

20   me before, and it suggests to me that they actually did

21   look at the other issues.  Now, I don't know if the law

22   clerk wrote outlines on them, but at least they saw

23   them.  They had them before them.  I presumed it passed

24   before their eyes and they saw the issue there raised.

25           Additionally -- I'm not sure to what extent, I

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   know that some cases out of the First Circuit have
 2   looked beyond the four corners.  I'm not sure to what
 3   extent that's completely prohibited now following a
 4   recent Supreme Court case, but the ground raised in the
 5   ALOFAR, it talked about prejudice to the defendant.  The
 6   reason it talked about prejudice was it was referring
 7   back to the Appeals Court's treatment of the defendant's
 8   Appeals Court brief.  So if the Court is willing to look
 9   at all to the other pleadings, which were I believe
10   attached to the appendix and which the Court did then
11   request to look at, the argument raised in the original
12   ALOFAR sort of only becomes meaningful if you look at
13   the original appellate issue.  The prejudice issue was
14   one prong of the overall Sixth Amendment/jury
15   instruction issue raised on appeal.
16           In terms of the appellate brief, it is my
17   understanding that the petitioner is required to exhaust
18   at all levels.  We would contend he exhausted quite
19   adequately in the Appeals Court.  Admittedly it was not
20   the topic heading in his Appeals Court brief, but it
21   does appear, if I can find it -- well, the issue in
22   which it appears in the Appeals Court brief, it's page
23   13 of our Appeals Court brief.  I'm not sure where that
24   is in your exhibits.  Let me check that out.  Sorry,
25   your Honor.  I'm trying to find it here.
```

PDF created with pdfFactory trial version www.pdffactory.com

1          In any event -- here we go.  Well, it's page
2     13 of Miss Benedetto's exhibits.  It's the first
3     document in her exhibit book.
4          The subject heading was -- the general issue
5     was the trial court had erred in various jury
6     instructions.  And then within that general heading, the
7     defendant gets into the impact of that error.  And one
8     of the impacts of the error was that it undermined
9     counsel's closing argument.  And we see on page 22 under
10    the same issue heading citations to Herring v. New
11    York -- citation to a state court case, which the
12    appellate attorney notes cites to Herring v. New York.
13    So although it could have been its own topic heading, it
14    could have been demarcated more clearly, I think it's
15    probable that a reasonable jurist would have been able
16    to identify it as a federal claim, which is the
17    requirement under exhaustion.  So I don't think we have
18    a problem in the Appeals Court.
19          Additionally, I filed a motion to -- for leave
20    to file an affidavit about what happened at the oral
21    argument in the Appeals Court.  And I apologize but I
22    had neglected to confer with Miss Benedetto about this
23    motion until this morning -- or actually this
24    afternoon.  And she has no objection to it
25    procedurally.  I believe she has no objection to our

PDF created with pdfFactory trial version www.pdffactory.com

1    filing the affidavit, although she believes it to be

2    irrelevant.

3              But if the Court is willing to look at that

4    affidavit, at the Appeals Court oral argument, I did

5    specifically tell the justices your Honor's one problem

6    with these instructional errors, one effect that they

7    had was to undermine closing argument.  Now, I don't

8    know if I identified it as a federal claim, but it

9    should have alerted them to that part of our appellate

10   court brief in which Herring was discussed and the

11   undermining of closing argument was discussed.

12             I don't know if your Honor wants me to get

13   into the trial court and how it was raised there or if

14   the main question that your Honor is considering --

15             THE COURT:  No, I don't care how it was raised

16   to the trial court.

17             MS. GOWEN:  Okay.  If you have no further

18   questions, that's it.  Thank you.

19             THE COURT:  Okay, thank you.  Anything else?

20             MS. BENEDETTO:  No, your Honor.

21             THE COURT:  You have no objection to the

22   affidavit that's proffered?

23             MS. BENEDETTO:  We want everything before the

24   Court that is relevant, so I don't object to it being

25   there.  That's all.  Thank you.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  All right, I'll take it under

2     advisement.  Thank you.

3          MS. GOWEN:  Thank you, your Honor.

4          THE CLERK:  All rise.  Court is in recess.

5          (Adjourned, 2:55 p.m.)

6                    - - - - - - -

7  CERTIFICATION

8          I certify that the foregoing is a correct

9     transcript of the record of proceedings in the

10    above-entitled matter to the best of my skill ability.

11

12    /s/ Shelly M. Killian
      Shelly M. Killian RPR, CM, CRR
13    Certified Realtime Reporter
      May 25, 2008
14

15

16

17

18

19

20

21

22

23

24

25